Opinion delivered May 20, 1887.

---

### No. 5497.

### COUNTY OF CALDWELL *v.* CROCKETT HARBERT ET AL.

1. MANDAMUS—SCHOOL CLAIMS.—In a proceeding by mandamus against a county to compel the commissioners court to issue a warrant on the county treasurer, and to levy a special tax provided for in the act of 1883 (page 41), to pay off a school claim, a cause of action is stated by alleging that plaintiff is owner of the claim which is described; that it had been audited by the former board; that it was unpaid, and that the county commissioners court refused to pay or provide for its payment. The act of April 2, 1883, contemplated that the audit made of a claim prior to that time should be considered sufficient evidence of its validity.

2. SAME—PLEADING.—In a suit for such claims chargeable to different school districts, it is not requisite that the petition should state how much is due from each one and define them, that fact the county records should show, and the law prescribes how the money to pay the claims must be obtained.

3. LIMITATION.—Limitation does not run against a school claim during the period of its recognition by the county as a valid claim, and not until after its disallowance. (Rev. Stats., art. 677.)

4. SAME.—The Legislature may require a county to pay a just debt, and thereby enable the creditor to enforce its collection, even after the lapse of such time as would otherwise bar it by limitation.

5. SCHOOL CLAIMS.—The fact that a county treasurer, in settlement with one of the sureties on his general bond, has misappropriated school funds and paid them to him, can furnish no defense in a suit against the county to enforce payment of school claims audited, allowed and required to be paid by the act of 1883, even though such surety were one of the several plaintiffs in the suit.

6. TRIAL BY JURY.—Though a trial by jury be improperly denied, such denial will not require a reversal of the judgment if, upon the facts of the case, no other judgment could have been rendered.*

7. STATUTE CONSTRUED.—The benefits of the act of August 7, 1876, enured to the holders and owners of school claims, whether teachers or their assignees of such claims.

8. LIMITATION.—In the absence of statutory prohibition, limitation will run in favor of or against a county.

APPEAL from Caldwell. Tried below before the Hon. L. W. Moore.

Suit by appellees against appellant on a number of school claims against school districts of Caldwell county, Texas, the object being to obtain a judgment against Caldwell county for the principal and interest due on the claims, and also a peremptory mandamus against the county judge and county commissioners court, requiring them to proceed under the provisions of an act of the Legislature, approved April 2, 1883, to provide for and secure the payment of the judgment.

The original petition was filed March 14, 1884, and the action was predicated upon claims alleged to have been issued to different parties as teachers in public free schools in various school districts of Caldwell county, Texas.

The pleadings are voluminous and their character is sufficiently apparent from the opinion.

Judgment for plaintiffs against Caldwell county for one thousand five hundred and thirty-two dollars and fifty-two cents, awarding a mandamus against the county commissioners court, commanding them to issue warrants for the amount of the

---

*In this case the defendants did not rest upon their exceptions and refuse to proceed without a jury, but introduced their evidence and proceeded to trial before the judge.—R.

judgment, and to proceed to levy the special tax provided for in the act of 1883, sufficient to pay off the claims, upon the taxable property within school districts named in the judgment, or in their discretion to pay off the judgment out of its general funds.

*Stringfellow & McNeil* and *A. M. Jackson,* for appellant, on their proposition that a county, though a political subdivision of the State with reference to its political powers, is, with reference to its local concerns, its contracts and local indebtedness, a municipal corporation, against whom and in whose favor the statutes of limitation run; and more than four years having elapsed between the accrual of the cause of action and the enactment of the law of April 2, 1883, the bar of the statute became a vested right in the county, which was not and could not be abrogated by the act of April 2, 1883, cited Wood on Limitations, 94; Houston & Texas Central Railway Company v. Travis County, 62 Texas, 16; Milam County v. Bateman, 54 Texas, 155, 156; Galveston County v. Tankersley, 39 Texas, 652; Worley v. The State, 48 Texas, 1; County of St. Charles v. Powell, 22 Missouri, 525; Evans v. Erie County, 66 Pennsylvania State, 222; County of Lancaster v. Brinthall, 29 Pennsylvania State, 38; Baker v. Johnson County, 33 Iowa, 151; Loring v. Boston, 12 Gray, Massachusetts, 209; State ex rel. McCurdy v. Tappan Town Clerk, etc., 29 Wisconsin, 664, 680, 681, 682, 683, 684, 685; Atkins & Co. v. The Town of Randolph, 31 Vermont, 237, 238, 239; Hampshire County v. Franklin County, 16 Massachusetts, 83; 34 Iowa, 175.

That an act of the Legislature which in any manner undertakes to enforce a demand barred by the statutes of limitations, is retroactive and void, they cited State Constitution, Bill of Rights, section 16; DeCordova v. City of Galveston, 4 Texas, 470, et seq.

*Nix, Storey & Storey,* for defendants in error, on their proposition that it was not necessary to the validity of the claims to go behind the action of the commissioners court in receiving and approving the report of the auditorial board, cited Hopkins v. Howard, 12 Texas, 7; Bullock v. Ballew, 9 Texas, 498; Taylor v. Harris, 21 Texas, 439.

On limitation, they cited Act of August 7, 1876, pages 89, 90; Act of April 22, 1879, sections 8-10, page 136; Act of April 2, 1883, section 1, page 41; Leach v. Wilson, Texas Law Reporter, volume

3, No. 7, November, 1884, page 434; Cooley on Constitutional Limitations, 366.

That the county was estopped by its former action and could not repudiate the claims, they cited Act of August 7, 1876; Foster v. Wells, 4 Texas, 103; Weatherford v. Mays, Id., 387; Burnley v. Cook, 45 Texas, 115; Fitch v. Boyer, 51 Texas, 344; Baker v. Rust, 37 Texas, 244; Giddings v. Steele, 28 Texas, 732; Welland Canal Company v. Hathaway, 8 Wendell, 480; American Decisions, volume 24, pages 54, 55; Mikeska v. Blum, Texas Law Reporter, volume 3, No. 10, page 583, February, 1885.

That mandamus was the proper remedy, they cited Freeman on Judgments, third edition, section 432a; The Justices v. Orr, 12 Georgia, 137; Carroll v. Board of Police of T. Co., 28 Mississippi, 48–50.

STAYTON, ASSOCIATE JUSTICE. There is no express averment in the petition that the claims sued on were for the services of teachers between September 1, 1873, and January 1, 1876, but the reasonable intendments, from the facts alleged, are that such was the character of the claims, made the basis of the action. There was no special demurrer reaching this question, and in its absence, upon general demurrer, "every reasonable intendments arising upon the pleading excepted to must be indulged in favor of its sufficiency." (Rule 17.)

The petition alleges that the claims sued on were approved by the auditorial board under the act of August 7, 1876, whose action was approved by the county commissioners court. The act of April 2, 1883, provides "that the county commissioners courts of the several counties in this State are authorized and required in cases where any part of claims audited as valid under an act of the Legislature approved August 7, 1876, * * * or under the act approved April 22, 1879, * * * remains unpaid, to cause to be issued *in favor of the holder* of such claim, a warrant upon the county treasurer against the school district owing such claim, for the amount due upon each claim." (General Laws, 1883, p. 41.) A subsequent section of this act provides how money shall be raised to meet such claims in case there be not enough in the treasury of the county to pay them. This act recognizes the validity of claims audited and allowed by the boards under the former laws, and makes it absolutely the duty of the several counties to pay them.

Had the petition alleged nothing more than that the plaintiffs were the owners and holders of the several claims made exhibit to the petition, and that these had been audited by the former boards, and that they were unpaid, the petition would have stated a good cause of action, alleging, as it did, that the county commissioners court had refused to pay them or provide for their payment. The petition alleged much more than this.

The act of April 2, 1883, did not contemplate that the claims should be again audited, but did contemplate that the audit already made should be deemed sufficient evidence of the validity of the claims; hence it was unnecessary for the petition to allege all the facts which it might have been necessary to allege, had the claims not already been audited.

The first assignment of error is that: "The court erred in overruling defendant's general demurrer and special exceptions." There were fifteen exceptions relating to different matters, and under well established rules, the assignment is too general to require further consideration. (Rules 23, 27.) The matters under this assignment, pointed out in the brief of counsel, have no merit.

The sums claimed by the plaintiff may be, and doubtless are, due from different school districts in the county, but it was not necessary that the petition should define these several districts and allege how much was due from each one of them.

These are matters which it must be presumed that the records of the county showed, and the act of April 2, 1883, points out how the money shall be raised if it becomes necessary to levy a tax for that purpose.

It is urged that the claims were barred by the statutes of limitation. The claims were recognized as valid claims by the county commissioners court through its order approving the report of the auditorial board, and directing the payment of them, and so continued until that court rejected the claims but a short time before this action was brought, and no action could legally have been brought on them until they were thus disallowed. (Rev. Stats., art. 677.)

If this, however, had been otherwise, we see no reason to doubt the power of the Legislature over one of the municipal subdivisions of the State to require the payment of any just debt after the lapse of such time as would bar it by limitation. (Dillon on Mun. Corp., 57-76.) Such would have been the effect of the act of April 2, 1883, had the claims been barred.

The court held that the county was estopped from denying the validity of the claims; whether this was the effect of the order of the county commissioners court approving the report of the auditorial board and directing the payment of the claims is unimportant; for the act of April 2, 1883, established the validity of all claims which had been approved by the board, and made it unnecessary for the plaintiffs to show more than that the claims had been approved by the boards created under the acts referred to in that act. The defendant's pleading on the matter now under consideration consisted of mere legal conclusions, and stated no facts tending to show that the claims were invalid, and the demurrer to so much of the answer would have been properly sustained on this ground had it not been true that the act of April 2, 1883, in effect, declared valid all such claims as had been approved by the auditorial boards.

If Caldwell county had collected and placed in the hands of its treasurer a sum sufficient to pay the claims sued on, this did not operate a payment of them or relieve the county from the obligation to raise more money to pay them if that placed in the hands of the treasurer for that purpose was appropriated to some other purpose; and for this reason the court did not err in sustaining a demurrer to the eighth paragraph of the defendant's answer.

The ninth paragraph of the defendant's answer did not state such facts as would make the plaintiff responsible for any funds which the county treasurer may have placed in the bank of Harbert, Blanks & Co. The presumption is that the county was secured by the bonds required of the county treasurer, and if it desired to hold the bank, in which he may have made deposits responsible for moneys deposited, it was necessary that facts should have been stated which would fix such responsibility.

If the treasurer, in settlement with one of the sureties on his general bond to the county had turned over to him school funds, this of itself would not be sufficient to fix liability on that person, and much less would it be so to fix liability on the plaintiffs one only of whom was such surety.

There are many assignments based on the rulings of the court below in admitting and rejecting evidence. There are no bills of exception relating to these rulings, other than such as we find in the statement of facts filed after the close of the term at which this cause was tried. These can not be considered; hence the rulings of the court in so far can not be reviewed.

We are of the opinion that, under the facts stated in the bill of exceptions the appellant was entitled to have a trial by jury, but the refusal of the court to grant this is not sufficient reason for reversing the judgment, if, under the evidence, none other could have been rendered.

The statement of facts is not made up, as is usual, of the substance of the evidence of witnesses and of documentary evidence offered; but consists of admissions that given facts were "proved." The facts thus admitted to have been proved were such as to require a judgment for the plaintiffs. On them, no other judgment than that entered could have been given. The admission of facts proved ought to be given the same weight as though upon special issues these facts had been found by a jury. Though there was error in denying a jury, it did not operate to the injury of the defendant.

Whether the court erred in the fifth conclusion of fact is unimportant; for if the county of Caldwell, after the claims sued upon were audited, did levy and collect a sufficient tax to pay them, this did not operate as a payment. The first and second conclusions of fact found by the court seem to be sustained by the facts admitted to have been proved.

It is urged that the act of August 7, 1876, was for the benefit of teachers only, and that persons to whom teachers had transferred their claims were not entitled to the benefit of its provisions, or to the benefits of the subsequent laws to which we have referred, and that the audit of the claims in favor of the appellants was unauthorized. This is too narrow a view of the question; and were there not that, in any of these laws, which showed that they were intended for the benefit of any holders of claims originally due to teachers for services between September 1, 1873, and January 1, 1876, we would be slow to come to the conclusion that the Legislature contemplated giving relief only to such teachers as had been able to hold their claims for several years, and to deny it to persons who by their purchase had enabled teachers to realize on claims which the counties failed to provide for as they should have done. The purpose of the statutes was not to provide bounties, but to secure rights growing out of services rendered, and it was a matter of indifference to the State in whose hands the claims might be.

The statutes, however, are not silent upon this subject. The act of April 2, 1883, declares that the county commissioners

court shall "cause to be issued in *favor of the holder of such claims* a warrant on the county treasurer."

The second section of that act, in relation to claims that had not been audited by the former boards, provided that "*the holder of such claim may present the same* to the commissioners court of such county, who shall audit the same and *issue a warrant therefor as provided in section 1 of this act.*"

It is urged that the acts of August 7, 1876, April 22, 1879, and April 2, 1883, are unconstitutional, in that they are retroactive in character and create demands where none before existed. That the Constitution commanded the Legislature to pass these laws is a sufficient answer to this claim. (Const., art. 16, sec. 36.) What the Constitution commands can not be unconstitutional. These laws, however, did not create demands where none before existed; they simply provided a means by which the validity of claims could be determined, and at the same time provided the manner in which money to pay them should be raised.

As before said, there can be no constitutional objection to the power of the Legislature to require a municipal subdivision of the State, such as a county, to provide for and pay any just claim against it after the lapse of such time as would ordinarily bar the claim. That in favor of and against counties, limitation will run in the absence of some statute to the contrary, does not affect the question.

The power of the State to recognize and pay a claim against itself after the lapse of any period of time can not be questioned on any constitutional ground; and the power of the Legislature over counties in reference to such matters as only affect them as municipal subdivisions of the State through which local affairs are conducted, is just as broad.

As we have before said, however, the claims made the basis of this action were not barred by any time elapsing after the adoption of the present Constitution of this State, which required that such claims should be paid.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*