## AMERICAN SURETY CO. OF NEW YORK v. HILL COUNTY et al. (No. 561–4043.)

(Commission of Appeals of Texas, Section A. Dec. 20, 1924.) .

**1. Highways ⬤⇒90 — Contractor and surety held guilty of conversion of road district bonds sold below par in violation of statute.**

Where commissioner's court refused to deliver special road district bonds to contractor to be sold below par, until execution of indemnity bond, execution by surety of indemnity bond, together with agreement giving contractor and surety joint control of bond, *held* to render contractor and surety jointly liable for conversion of bonds upon their being sold below par in violation of Rev. St. art. 632.

**2. Highways ⬤⇒90—Measure of damages for conversion of road district bonds sold below par is par value.**

The measure of damages for conversion of special road district bonds by contractor and surety to whom they were delivered for sale at less than par, in violation of Rev. St. art. 632, pursuant to illegal agreement with commissioner's court, is par value of bonds.

**3. Appeal and error ⬤⇒1073(1)—Trial court may enter only possible judgment without verdict on which to base it.**

Where trial court rendered under the facts, the only judgment that could be entered, it was not error to render such judgment, when case was tried by jury, though jury returned no verdict as to one defendant.

**4. Highways ⬤⇒90—Illegal sale of road district bonds below par subsequent to valid voting at issuance held not to render bonds void.**

Where the vote and issuance of special road district bonds was valid and in compliance with law, and subsequently commissioner's court and road contractor entered into illegal agreements whereby they were sold below par, in violation of Rev. St. art. 632, bonds were not invalidated so as to prevent recovery against contractor and surety for their conversion.

**5. Appeal and error ⬤⇒1062(5)—Refusal to submit special issues not error, where findings thereon could not affect judgment.**

Court's refusal to submit special issues requested by defendant was not error, where, even though jury found in favor of defendant on such issues, findings could not affect judgment that trial court should have given.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Hill County and others against the American Surety Company of New York

and others. Judgment for plaintiffs was affirmed by Court of Civil Appeals (254 S. W. 241), and named defendant brings error. Affirmed.

O. L. Stribling, of Waco, and Phillips, Townsend & Phillips, of Dallas, for plaintiff in error.

Vaughan & Abney, of Hillsboro, and Sleeper, Boynton & Kendall, of Waco, for defendants in error.

CHAPMAN, J. Prior to March 8, 1920, good roads districts Nos. 3, 6, 7, 10, and 12 in Hill county had voted road bonds in the aggregate of $904,000, and on dates ranging from September 8, 1919, to March 8, 1920, the commissioners' court of Hill county passed orders authorizing the issuance of said bonds.

Article 632, Revised Civil Statutes, which is a part of the special road law of Hill county, provides that such bonds when issued shall continue in the custody of and under the control of the commissioners' court, and that they shall be sold by said court at not less than their par value, and that the proceeds therefor shall be placed in the county treasury. The commissioners' court was unable to sell these bonds at par value.

On September 4, 1920, by order of the commissioners' court duly entered, the bid of Bibb & Hughes for all county work, to be paid for from the proceeds of sale of said bonds issued by said special road districts Nos. 3, 6, 7, 10, and 12, was accepted.

At and before the time when the bid of Bibb & Hughes for said work was accepted, and contract entered into, it was verbally understood and agreed between the commissioners' court and W. S. Bibb, Jr., that the road bonds would be delivered over to W. S. Bibb, Jr., without his paying any money therefor, and that he should sell them at discount and pay for the bonds in four equal installments, one to be paid when the bonds were sold, and one installment to be paid every four months thereafter, and that the prices of the road work in the contracts between Bibb & Hughes and the commissioners' court for the construction of the roads in said special road districts should be increased by the estimated amount of the discount at which said bonds could be sold, and the contracts for the road work in said special road districts should embrace an additional amount to cover the estimated discount at which said bonds could be sold. Various orders were spread upon the minutes of the commissioners' court in an attempt to make the transactions between the Commissioners' court and Bibb and Bibb & Hughes appear to be regular.

Before the commissioners' court would deliver the road bonds to Bibb they required of him a bond to protect them against any default on his part in payment for the bonds, and on September 15, 1920, this bond in the sum of $500,000 was executed by W. S. Bibb, Jr., as principal, and the American Surety Company of New York as surety.

On September 21, 1920, W. S. Bibb, Jr., for himself, and for the partnership of Bibb & Hughes, entered into a contract with the American Surety Company of New York, and consented to by the commissioners' court of Hill county, Tex., whereby, when the road bonds were delivered by the commissioners' court, they were to be under the joint control of W. S. Bibb, Jr., and the American Surety Company of New York, and the proceeds from the sale of said bonds were to be under the same joint control.

About November 3, 1920, all the road bonds were taken to Chicago by W. S. Bibb, Jr., and a representative of the American Surety Company of New York, where they were sold by Bibb at 82 per cent. of the amount of said bonds and accrued interest, and the proceeds placed in bank subject to the joint control of W. S. Bibb, Jr., and the American Surety Company of New York.

Hill county, on its own behalf, and for the use and benefit of the several special road districts, brought suit against Bibb & Hughes and the American Surety Company of New York for the conversion of the road bonds. Certain banks alleged to be holding portions of the proceeds of the sale of the bonds were also made parties. The case was tried with a jury. There was some conflict in the evidence as to whether, at the time Bibb made sale of the bonds, the representative of the surety company knew what he was getting for them. The facts were submitted to the jury upon special issues. The issues submitted to the jury were as to whether W. S. Bibb, Jr., in his dealings with the commissioners' court of Hill county with reference to the road bonds were representing the copartnership of Bibb & Hughes.

The defendant, American Surety Company, requested that the following issues be submitted to the jury which were refused: First, as to whether the surety company exercised dominion or control over the bonds or acquired or held possession of them in denial of, or inconsistent with, the rights of Hill county or the road districts. Second, as to whether the surety company, through any of its agents, had notice or knowledge prior to Bibb's sale and delivery of the bonds that he had possession of them for the purpose of selling them for less than their par value. Third, whether the surety company assumed joint custody of the bonds for the purpose of aiding Bibb to sell them at a price below par. Fourth, whether the surety company knowingly participated in the sale which Bibb made of the bonds.

The jury found that Bibb, in his negotiations with the commissioners' court of Hill county, was acting for the copartnership of Bibb & Hughes. No verdict affecting the American Surety Company was found by the

jury. It was agreed that the market value of the bonds at the nearest point to Hillsboro, at which there was a market value, was 82 per cent. of their face value.

Judgment was rendered against the banks mentioned for the part of the proceeds of the bonds that they held and against Bibb & Hughes and the American Surety Company of New York, for $461,437.53, based on par value of the bonds. The judgment provided that plaintiff take nothing against Bibb and the surety company on the bond. The Court of Civil Appeals of the Fifth District affirmed the judgment of the district court. 254 S. W. 241. The American Surety Company of New York, by proper assignments, has raised in this court the following issues: First, that there was no conversion of the bonds by the surety company under any aspect of the evidence; second, that the measure of damages in this case, if damages be allowed, is the market value of the bonds which was agreed to be 82 cents on the dollar and not the par value of the bonds as found by the court; third, that, the case having been tried with a jury, there could be no valid judgment rendered against the surety company without a verdict of the jury either independently found by the jury or directed by the judge upon which to base such a judgment; fourth, that the bonds in question were issued pursuant to and for the purpose of carrying out a corrupt and fraudulent agreement between the commissioners' court and Bibb, and were therefore void from their inception and incapable of conversion as such; fifth, assignments were also based upon the refusal of the trial court to submit to the jury the four special issues above set out requested by the surety company.

[1] We will consider the issues in the order mentioned. As to the first issue, we quote this from the answer of the surety company:

"For special answer, if so required, this defendant says that the consideration for the bond in the sum of $500,000, attached as Exhibit D to plaintiff's petition, was that the commissioners' court of Hill county and R. T. Burns, county judge of said county, should deliver the custody and control of the road bonds of the special road districts Nos. 3, 6, 7, 10, and 12 in said county, referred to in plaintiff's petition, to W. S. Bibb, Jr., for sale in the market at a cash price less than the par value, with accrued interest, of the bonds, and that the said W. S. Bibb, Jr., would pay into the county depository of said Hill county the proceeds of said bonds sold at less than their par value in four equal quarterly installments from and after the date of the sale of said bonds in the market, and said bond was executed by this defendant as a surety to indemnify said R. T. Burns, county judge of Hill county, Tex., and his successors in office against pecuniary loss (not exceeding the penalty in said bond) that said county judge as employer might sustain by reason of any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, and willful misapplication on the part of said W. S. Bibb, Jr., of the proceeds of said road district bonds after the same had been sold by him in the market for less than their par value. That at the time of the execution of said bond, and at the time of the issuance of said road district bonds by said commissioners' court, it was understood and agreed that the same would be sold below par by the said W. S. Bibb, Jr. And this defendant says that the said W. S. Bibb, Jr., thereafter sold said bonds in the market for $744,582.22 in cash."

Cooley on Torts (3d Ed.) vol. 1, p. 244, states the law as to who are liable for tort as follows:

"All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid, or abet its commission, are jointly and severally liable therefor."

In Cabell v. Shoe Co., 81 Tex. 104, 16 S. W. 811, certain persons gave a United States marshall an indemnity bond to protect him in making a levy on goods. The levy was made and proved to be wrongful. The marshall, the sureties on his official bond, and the sureties on the indemnity bond were sued for conversion of the goods. The Supreme Court, in an opinion by Chief Justice Stayton, held the sureties on the indemnity bond, along with the other defendants, liable, and made this statement:

"We understand that all persons who contribute to the commission of a tort through which injury results to another are responsible as principals, and that such persons as induce a wrongful levy to be made by giving to the officer making it an indemnity bond may be treated as trespassers."

The commissioners' court of Hill county refused to deliver possession of the bonds to Bibb until he made them an indemnity bond. The American Surety Company voluntarily made the bond, and by this act, and by the agreement above mentioned as to the joint custody of the bonds, made it possible for Bibb and the surety company to become in joint custody of the bonds for an illegal purpose on the part of Bibb, and, when this illegal purpose was carried out by Bibb, we think that under the above authorities the execution of the indemnity bond and the joint control contract by the surety company would make the surety company and Bibb both liable for conversion of the bonds, and that the liability of the surety company was made doubly sure by its permitting the bonds, while in its joint custody with Bibb, to be disposed of illegally. We have refrained from discussing the question as to whether the defendants Bibb and surety company were guilty of conversion because of their act in obtaining custody and control of the bonds, when the statutes provide that they shall con-

tinue in the custody of, and under the control of, the commissioners' court, for the reason that the illegal disposition of the bonds, in the manner mentioned, makes the liability of these defendants so sure as to make a discussion of that question unnecessary.

[2] In considering the second issue mentioned, it must be remembered that the law provides that the commissioners' court cannot dispose of road bonds at less than their par value, and that the commissioners of Hill county and Bibb, charged with full knowledge of this law, deliberately entered into a scheme whereby Bibb should obtain the bonds from the commissioners' court at less than their par value and appropriate them to his own use, and under no phase of the scheme were the respective road districts to receive full benefit of the par value of their bonds, and when this illegal scheme was consummated all those who participated in it were guilty of a trespass against the respective road districts, and were liable to them for the par value of their bonds. For us to hold that the measure of damages in this case can be based on a value of the bonds at less than their par value would be nothing short of saying that, although the law provides that road bonds cannot be disposed of by the commissioners' court at less than their par value, yet, if the court makes their minutes show a legal sale, they can, under a separate verbal agreement with purchasers of the bonds, sell the bonds at less than their par value, and would be for us to say that the commissioners' court can do the very thing that the law says they cannot do, and thereby make the law ineffective. Again we mention that the trial court found in its judgment that the commissioners' court entered into a verbal agreement with Bibb, whereby Bibb was to obtain the bonds at less than par value. We have been cited to no authority holding that the commissioners' court could, in violation of a law like the one governing them in this case, by any kind of transaction dispose of road bonds at less than their par value.

[3] As to the third issue mentioned, we have already found that the execution of the indemnity bond by the surety company, and the sale of the bonds while in its joint custody, made the surety company liable for conversion of the bonds, and in our opinion no other judgment, under the evidence, could have been found by the trial court than that which was found, and this issue resolves itself into the following: When the trial court renders, under the facts, the only judgment that could be rendered, is it error for the trial court to render such judgment when the case is tried by a jury, without a verdict from the jury upon which to base such judgment?

In Caldwell Co. v. Harbert, 68 Tex. 321, 4 S. W. 607, in an opinion by Chief Justice Stayton, we find the following language with reference to this issue:

"We are of the opinion that under the facts stated in the bill of exceptions the appellant was entitled to have a trial by jury, but the refusal of the court to grant this is not sufficient reason for reversing the judgment, if, under the evidence, none other could have been rendered.

"The statement of facts is not made up, as is usual, of the substance of the evidence of witnesses and of documentary evidence offered; but consists of admissions that given facts were 'proved.' The facts thus admitted to have been proved were such as to require a judgment for the plaintiffs. On them no other judgment than that entered could have been given. The admission of facts proved ought to be given the same weight as though upon special issues these facts had been found by a jury. Though there was error in denying a jury, it did not operate to the injury of the defendant."

In Fant v. Sullivan (Tex. Civ. App.) 152 S. W. 515, in which writ of error was denied, we find the following:

"The rule is well established in Texas that appellate courts will affirm all judgments of the court below when the evidence is such that the higher court can say that it did not admit of any verdict or judgment other than that which was rendered."

In City of San Antonio v. Salvation Army (Tex. Civ. App.) 127 S. W. 860, in which writ of error was denied by the Supreme Court, we find this language:

"There were no controverted questions of fact to be tried by a jury, and, if there had been a jury, it would have been the duty of the court to have instructed a verdict for appellee. No other judgment than the one rendered could have been properly entered, and, though there may have been error in denying a jury, it did not operate to the injury of appellants. Caldwell County v. Harbert, 68 Tex. 321, 4 S. W. 607."

It seems that these authorities that have been passed upon by our Supreme Court resolve this issue against the contention of plaintiff in error. Much stress is given by plaintiff to the opinion of the Supreme Court of the United States in Slocum v. New York Life Ins. Co., 228 U. S. 376, 33 S. Ct. 528, 57 L. Ed. 879, Ann. Cas. 1914D, 1029, but the opinion in that case was based upon the Seventh Amendment to the Federal Constitution, and in the opinion we find the following language:

"If this was an infraction of the Seventh Amendment it matters not that it was in conformity with the state statute, or with the practice thereunder in the courts of the state, for neither the statute nor the practice could be followed in opposition to the Amendment, which, although not applicable to proceedings in the courts of the several states, is controlling in the federal courts."

And also much stress is given to the case of Ablowich v. National Bank, 95 Tex. 431,

67 S. W. 79, and in that case we find the following language:

"When a jury has been demanded by either party, he is entitled to have every material issue made by the pleading and the evidence submitted to that jury, and the trial court cannot enter a judgment upon a verdict which fails to pass upon any material issue submitted to the jury, unless it be in case of a special verdict, which is provided for by statute."

This last case was suit for a note and foreclosure of the mortgage lien, and the court instructed the jury as follows:

"The plaintiff in this cause is entitled to recover the full amount of the note sued on which is $567.75, with a foreclosure of the mortgage lien, and you will so find, unless you find for defendant upon another issue that was submitted."

The jury returned the following verdict:

"We, the jury, find for the plaintiff in the sum of $567.75."

As we understand this case the court held that this finding of the jury was, in effect, a finding against the plaintiff for the foreclosure of its mortgage and that the trial court could not enter a judgment in conflict with the finding of the jury.

[4] As to the fourth issue, the basis for the issuance of the bonds, were the elections held in the different road districts, and these elections were held before negotiations were begun between Bibb and the commissioners' court, and all that the commissioners' court had to do with the issuance of the bonds, after the elections were administrative acts prescribed by statute, and there is nothing in the record to show that these duties were not performed exactly as the law prescribed, and there is nothing in the record to indicate that every act provided by law as to the manner in which the elections were to be ordered and held, and the bonds issued, were not performed in strict compliance with law, and the agreement between Bibb and the court was not with reference to these duties, and could not affect these necessary regular legal proceedings. The voting and issuance of the road bonds fixed no liability on any one except the taxpayers of the several road districts, and, if there was any irregularity in the voting and issuance of the bonds, they, and not Bibb, upon whom no liability was fixed by the issuance of the bonds, and upon whom no duty rested as to the voting and issuance of the bonds, would be the proper parties to bring suit to test such irregularity. All that Bibb did with reference to the bonds was illegal, and was voluntary on his part, and could only render the attempted contract between him and the commissioners' court void, and could not have any effect on the legality of the bonds, which, so far as the record shows, may now be in the hands of innocent parties. Bibb cannot seek to have the bonds declared void for his benefit, when the only grounds that he claims for declaring them void was an illegal act, which had nothing to do with the manner of voting and issuing the bonds, and in which he participated.

[5] As to the assignments based on the refusal of the trial court to submit to the jury the special issues above set out requested by the surety company, we have already found that the signing of the bond by the American Surety Company and the sale of the bonds below par, while in the joint custody of the surety company and Bibb, so certainly fixed the liability of the surety company for conversion of the bonds that the trial court could have rendered no other judgment than a judgment against the American Surety Company based on these facts. Therefore the questions raised in the special issues requested by the surety company become immaterial, because, even though the jury had found in favor of the surety company on these issues, such findings by the jury could not have had any effect upon the judgment that the trial court should have given.

We recommend that the judgment of the Court of Civil Appeals and the district court be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

CURETON, C. J., not sitting.