Mrs. M. B. BUFORD et al., Appellants,

v.

STATE of Texas, Appellee.

No. 10631.

Court of Civil Appeals of Texas.

Austin.

Jan. 28, 1959.

Rehearing Denied March 4, 1959.

Dan Moody, Austin, Vinson, Elkins, Weems & Searls, Houston, Fred W. Moore, Houston, for appellant.

Will Wilson, Atty. Gen., L. P. Lollar, Howard Mays, Asst. Attys. Gen., for appellee.

ARCHER, Chief Justice.

This is an appeal from an order of the District Court sustaining defendant's special exceptions numbered 1, 2, 3, 4 and 5, and overruling the special exceptions of plaintiffs. We will hereinafter set out the several exceptions in more detail.

This suit is on forty six One Thousand Dollar Texian Loan Bearer Bonds issued by the State of Texas under an Act of the Legislature, approved April 8, 1861, the bonds being payable to bearer July 1, 1877, with interest at 8% per annum from July 1, 1862 until paid. The bonds are all dated January 1, 1862, except bond No. 5 which is dated March 25, 1862.

Appellants as plaintiffs alleged that they are the owners and holders of forty six One Thousand Dollar Texian Loan Bearer Bonds issued under an Act of the Texas Legislature, approved April 8, 1861, payable

and due July 1, 1877, with interest coupons for January 1, 1863, July 1, 1863, January 1, 1864, July 1, 1864 and January 1, 1865 which were clipped; that all the bonds were duly registered by the State Comptroller and the State is liable for the payment of the bonds.

That by House Concurrent Resolution No. 44, passed by the 55th Legislature, Regular Session, 1957, p. 1585, approved by the Governor and filed with the Secretary of State June 12, 1957, plaintiffs were authorized to file this suit at any time within two years from the effective date of the resolution, and that the suit is limited for the principal amount of said bonds and interest to the maturity date of the bonds and prayed for judgment.

The Special Exceptions filed by the State, as defendant are:

"(1) * * * that Plaintiffs' suit was not filed in the time and manner provided by law; namely, House Bill 309, Chapter 392 of the Acts of the 52nd Legislature, Regular Session, 1951, Page 677 (Article 842g, Vernon's Civil Statutes), which provides, in part, as follows:

" 'Section 1. The consent of the Legislature of the State of Texas is hereby given to all lawful holders of bonds issued under the Act of April 8, 1861, their executors, administrators and heirs to file and prosecute suit against the State of Texas, Comptroller of Public Accounts and the State Treasurer for moneys alleged to be due in unpaid principal and interest on said bonds .* * *

" 'Sec. 2. Said suit shall be brought in Travis County at any time within two (2) years from the date of this Act.' * * *

"(2) The Defendant, State of Texas, excepts to Plaintiffs' original petition in that it affirmatively appears therefrom that Plaintiffs' suit was not filed

in the time and manner provided by Article 5527, Vernon's Civil Statutes, which provides, in part, as follows:

" 'There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits. in court of the following description:

" '1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing.'

"and that Plaintiffs' suit and cause of action, if any they have, was at the time of filing of Plaintiffs' original petition barred by the express terms of said statute in that it was not filed within four years from the date the same accrued.

"(3) The Defendant, State of Texas, excepts to Plaintiffs' original petition in that it affirmatively appears therefrom that Plaintiffs and any under whom they may claim have silently stood by and have wholly failed either to give notice or make demand upon the Defendant, State of Texas, or any officer or agent thereof charged with any official duty in connection with said bonds for approximately 75 years, and nowhere do Plaintiffs allege that said bonds were ever presented for payment at maturity or thereafter to the State of Texas or any officer or agent thereof charged with any official duty in connection with said bonds, and under the circumstances Plaintiffs are guilty of laches and are not now entitled to prosecute their claim for recovery upon said bonds; to render any judgment therefor and to pay the same would be contrary to and in violation of the public policy of this State, the presumption being that the State of Texas will pay promptly all valid and legal obligations of the State or make provision therefor.

"(4) The Defendant, State of Texas, specially excepts to Plaintiffs' orig-

inal petition in that it affirmatively appears therefrom that Plaintiffs are now endeavoring to enforce a stale demand against the State of Texas, it affirmatively appearing that said bonds matured more than 75 years past and Plaintiffs are now in law and equity estopped from presenting and prosecuting said suit against the State of Texas upon said stale demand, the presumption being that if valid they would have long since been paid or provision made therefor.

"Wherefore, the Defendant, State of Texas, prays that the foregoing exceptions and each of them be sustained and this suit be by the Court dismissed.

"(5) Without waiving the foregoing exceptions the Defendant specially excepts to the sufficiency of Plaintiffs' petition in that it nowhere alleges when and how and under what circumstances Jeff Chapman, under whom Plaintiffs purport to hold said bonds, acquired or came into possession of them. In this connection the Defendant, State of Texas, will show the Court that Jeff Chapman was not born until several years after the maturity date of said bonds. Without this information, which is particularly within the knowledge of Plaintiffs, the Defendant is not able to properly prepare for the trial of this case. Plaintiffs should, therefore, be required to amend their pleading to disclose said information, failing in which Plaintiffs' suit should be dismissed."

An answer subject to the plea to the jurisdiction and special exceptions, was a general denial and that Concurrent Resolution No. 44 is unconstitutional and void and violates Section 3 of Article I of the Constitution, Vernon's Ann.St., and suit was not brought in accordance with House Bill No. 309, and is barred by the four year statute of limitation and that the bonds were issued after the State had seceded and was a member of the Confederacy and for the purpose of financing the war, and pled Section 4 of the Fourteenth Amendment. Further answer was that Ordinance No. 2, 5 Gammel Laws 887 (1898) providing in part that all debts created in aid of the late war were declared void, and that the Legislature was forbidden to make any provision for the payment of any debts so contracted from the 28th of January, 1861 until the 5th day of August, 1865, and further pled Ordinance No. 9, 5 Gammel Laws of Texas 894, passed on March 27, 1866, and pled other constitutional inhibitions, and that plaintiffs are guilty of laches and are estopped to prosecute the demand.

Plaintiffs by supplemental petition alleged that the granting of the right to sue by Resolution No. 44 the State did not create or destroy any rights in the State but waived the immunity against suit, and gave plaintiffs no cause of action that did not exist by virtue of a contract of the State; that the defense of limitation or laches is not available to the State and that Article 842g, V.A. C.S. is not applicable and that the ordinances pled by the State have no effect as law, but are the wishes of certain persons and matters of opinion; that the bonds are negotiable instruments and import a valuable consideration, and were not appropriations for private purpose and are not barred; that the arbiter's reports are void; and lodged a general denial.

A similar suit to this one was filed September 20, 1954 by the same parties in the 11th District Court of Harris County, with like allegations, but claiming the right to sue by virtue of House Concurrent Resolution No. 118. Laws 1953, p. 1155. Similar answers to those in the present suit were filed. The suit was dismissed on motion of plaintiffs on July 22, 1957.

Since the court sustained the exceptions hereinabove set out we have not stated the pleadings more in detail but have given attention to such pleadings and have set out in brief a substantial resume of such pleadings.

The appeal is based on ten points and are to the effect that Article 842g enacted in 1951 was of such nature as not to grant permission to sue; that Resolution No. 118 adopted by the 53rd Legislature in 1953 was unconstitutional on its face; that House Concurrent Resolution No. 44, effective June 11, 1957, is as binding as a statute and lawfully granted permission to sue the State; that the State can only plead limitations subsequent to June 11, 1957; that laches follow the law; that the bonds are payable to the bearer and are negotiable instruments; that the ordinance of 1866 invalidating debts contracted by the Confederacy, with reference to adjusting and funding the State debt are in violation of Section 10, Article I of the Federal Constitution; that the issuance of the bonds are not in violation of Section 44, Article III of the Texas Constitution; that the bonds do not represent a debt incurred in aid of the Rebellion against the United States; and finally that the Fourteenth Amendment to the Federal Constitution was unlawfully adopted by the various states and is void.

Appellants contend that Article 842g granted no permission to sue, because of the phrase "prorated to the extent only of the amount heretofore reimbursed to the State of Texas by the United States government for the principal and interest on said bonds" since none of the bonds here involved were reimbursed in whole or in part.

The further position of appellants is that Resolution No. 118 was unconstitutional on its face because of the phrase "in like manner as similar suits instituted against private corporations are tried."

Martin v. Sheppard, 145 Tex. 639, 201 S.W.2d 810 is cited.

The further contention is that House Concurrent Resolution No. 44 particularly provided for rights and remedies to be cumulative and is as binding as a statute and is not in violation of Section 3 of Article I of the Texas Constitution and Section XIV of the U. S. Constitution and cite a number of cases such as Duke Power Co. v. South Carolina Tax Commission, 4 Cir., 81 F.2d 513; 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392; Martin v. Sheppard, supra, and cases cited therein; State v. Elliott, Tex.Civ.App., 212 S.W. 695, er. ref.; State v. Isbell, Tex.Com.App., 127 Tex. 399, 94 S.W.2d 423.

Appellee makes six counterpoints contending that the court did not err in sustaining its Special Exceptions Nos. 1, 2, 3, 4, and 5 which we have hereinabove set out.

■ We do not believe the court erred in sustaining the first five of the special exceptions and in overruling appellee's plea to the jurisdiction of the court, and appellants declining to amend, dismissed the cause of action.

The first special exception was that plaintiffs' suit was not filed in the time and manner provided by House Bill 309 (Article 842g, V.A.C.S.) enacted in 1951, providing that suit shall be brought within two years from the date of the Act, and plaintiffs' cause of action, if any, was barred by the express terms of the statute, and special exception No. 2 was that plaintiffs' suit was not filed in the time provided by Article 5527, V.A.C.S., the four year statute of limitation.

In 1951 the Legislature passed House Bill 309, codified as Article 842g, which in brief and in part provided that lawful holders of bonds issued under the Act of April 8, 1861, called Texian Loan, consent to sue on said bonds, principal and interest, and providing that the statute of limitations was not tolled, or admission of liability, and providing that suit be brought in Travis County within two years from date of the Act.

This bill became effective September 7, 1951. Appellants' suit was filed July 31, 1957, and the trial court held that the bill applied to appellants and the bonds sued on, and that their suit was barred as a matter of law.

The defense of limitation is available to the State.

Callahan v. Giles, 137 Tex. 571, 155 S.W. 2d 793, and cases cited therein; Railroad Commission v. Beacon Oil & Refining Co., Tex.Civ.App., 227 S.W.2d 293, er. ref., N.R.E., and authorities and cases cited therein.

Appellants' cause of action is founded on a contract with the State and such cause, if such there be, accrued on July 1, 1877, and suit was filed approximately 80 years later and is barred by the four year statute of limitation. Section 6 of House Bill 309 provided that the statute of limitations was not tolled, or such cause revived if same was barred by the statute of limitations.

In relinquishing its sovereign immunity to be sued the State may attach such conditions to the right as it deems appropriate.

38 Tex.Jur., Section 35, p. 856.

House Concurrent Resolution No. 44, by the terms of which appellants seek to maintain their suit and avoid the application of general law by resolution is not effective for this purpose, as statutes cannot be amended in this manner. An amendment of a law must be re-enacted and cannot be amended by a resolution.

Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 104 S.W.2d 3; State Highway Dept. v. Gorham, 139 Tex. 361, 162 S.W.2d 934; Humble Oil & Refining Co. v. State, Tex. Civ.App., 104 S.W.2d 174, er. ref.

Concurrent Resolution No. 44, under which this suit was filed, provides:

"Whereas, The Fifty-second Legislature of the State of Texas duly enacted an Act set forth as House Bill No. 309, Chapter 392, Page 677 of the 1951 General Laws of Texas, which Act is also Article 842g of Vernon's Texas Civil Statutes wherein the State authorized suit on bonds comprising said Texian Loan to a limited extent, that is for the moneys alleged to be in unpaid principal and interest on said bonds, prorated to the extent only of the amount reimbursed to the State of

Texas by the United States Government, which the said Mrs. M. B. Buford and said Administrator contend did not apply to the bonds they hold and which they are unable to prove, such a requirement placing a burden on the bondholders that was no part of the original obligation and therefore said parties were prevented from asserting their rights as bondholders under said Article 842g; and

"Whereas, The Fifty-third Legislature, at its Regular Session, by House Concurrent Resolution No. 118, duly adopted by the House and Senate of the Texas Legislature at said Session and approved June 8, 1953, did authorize the said Mrs. M. B. Buford and the said George B. Lindler, Administrator, to file suit on the bonds just above referred to, but specified in said Resolution that said suit should be tried 'in like manner as similar suits instituted against private corporations are tried' which provision is unlawful and has been held to invalidate such Resolutions in other cases by the Supreme Court of Texas, and therefore, the said Mrs. M. B. Buford and the said George B. Lindler, Administrator, have not been able to properly maintain their suit, and it is the intention of the State of Texas to give said proper parties the opportunity to press their suit as bondholders without the limitations referred to, this Resolution being in addition to said Act and said Resolution, and any and all other Acts and Resolutions pertaining to the subject matter hereof; now, therefore, be it

"Resolved * * * That the said Mrs. M. B. Buford, her heirs, executors, administrators and assigns and George B. Lindler, Administrator of the Estate of Jeff Chapman, deceased, and his successors are hereby authorized to file, prosecute and maintain a suit * * *

* * * * * *

"Resolved, That the permission and authority granted by this Resolution be in nowise restricted or circumscribed except by the terms hereof; and, be it further

"Resolved, That the sole purpose of this Resolution is to grant permission to the aforesaid Mrs. M. B. Buford, her heirs, executors, administrators and assigns and/or George B. Lindler, Administrator, to bring suit against the State of Texas, and, no admission of liability of the State or of any fact is made in anyway by the passage of this Resolution, and it is specifically provided that the facts upon which recovery is sought must be proved in court as in other civil cases."

Special Exceptions Nos. 3 and 4 are directed to laches and estoppel.

It appears from the pleadings that no demand was made for payment of the bonds for more than 75 years and they are, as a matter of law, guilty of laches and are estopped from prosecuting this suit.

Generally laches is a defensive plea but as above stated, the petition shows such a long delay in making demand for the payment of the bonds, and the plea of laches may be raised by special exception.

In Texas Jurisprudence, 10 Year Supplement, Vol. 6, paragraph 14a (New), p. 758, it is stated:

"Effect of Court Rule.—Rule 94 of the Texas Rules of Civil Procedure provides that the defense of laches 'shall be set forth affirmatively.' This rule does not preclude the raising of the defense by special exception where it affirmatively appears from the allegations of the petition that the defense of laches is available. * * *"

Power v. State, 41 Tex. 102; Culver v. Pickens, 142 Tex. 87, 176 S.W.2d 167.

In 27 Tex.Jur., Secs. 2–3, pp. 15–18, laches and stale demand are discussed.

Francis R. Lubbock, while Governor, signed the bonds on January 1, 1862, and was elected State Treasurer in 1878, serving until January, 1891, and was familiar with the bonds and the maturity date, and if the holders of the bonds thought that they had a valid claim against the State, it may be assumed that the bonds would have been presented for payment, and if payment had been wrongfully refused, the holders had the remedy of mandamus.

Article 1735, V.A.C.S.

The Legislature met every two years subsequent to the maturity date of the bonds and if the bonds were valid, they could have paid them or made provision for payment.

Then too, in Governor Hubbard's initial message to the 16th Legislature on the State's finances stating the bonded indebtedness, these bonds are not mentioned but a list of other bonds is given.

Appendix "B", General Laws of Texas, 1876, pp. 40–43.

Since we are affirming the judgment of the court in sustaining appellee's special exceptions 1, 2, 3, and 4 and dismissing this cause, we do not find it necessary to consider or decide whether the Constitutions of 1866 and 1869 invalidating these bonds were right or wrong, or whether any contract has been impaired, or to decide whether the Fourteenth Amendment to the Federal Constitution was legally adopted, and its application to these bonds.

The judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

I withdraw my former concurring opinion and substitute therefor the following:

Secs. 1 and 2, Art. 842g, V.A.C.S., provide:

"Section 1. The consent of the Legislature of the State of Texas is hereby given to all lawful holders of bonds issued under the Act of April 8, 1861, their executors, administrators and heirs to file and prosecute suit against the State of Texas, Comptroller of Public Accounts and the State Treasurer for moneys alleged to be due in unpaid principal and interest on said bonds prorated to the extent only of the amount heretofore reimbursed to the State of Texas by the United States government for the principal and interest on said bonds.

"Sec. 2. Said suit shall be brought in Travis County at any time within two (2) years from the date of this Act." [1]

Appellants construe the latter portion of this Section as meaning "that the bondholders could recover *only* to the extent of the actual reimbursement, properly prorated." They then contend that they could not have recovered *anything* in a *suit brought under* that statute " * * * because the United States government never reimbursed the State of Texas for the bonds in question. * * *" This fact, no reimbursement, they say is true as a matter of law since there is in existence no Act of Congress authorizing such reimbursement.

The State places a different construction on the latter portion of Sec. 1, supra, as shown by the following quotation from its brief:

"But Appellants say that House Bill 309, the General Law giving all holders of bonds, such as Appellants in this case, the right to sue upon said bonds, does not apply to them or their bonds. They advance the theory that the phrase 'prorated to the extent only of the amount heretofore reimbursed to the State of Texas by the United States Government for the principal and interest on said bonds' excludes

them and their bonds from the application of House Bill 309, the General Law. The argument is wholly untenable. We think it clear that the Legislature meant that if any of the bonds had been reimbursed to the State of Texas by the Federal Government only to that extent would the bonds be subject to a proration. In other words, the State's liability would be reduced to the extent of such proration. Of course, if there were no bonds reimbursed by the Federal Government, this provision would have no application. If Appellants were entitled to recovery at all, they would be entitled to full recovery in the absence of a proration. If a proration were shown it would be borne in common by all the bond holders, and not merely by Appellants' bonds."

I do not agree with either construction. In my opinion the proration provision of this Article constitutes a limitation on the amount of money which the Legislature would be authorized to appropriate for the payment of judgments obtained in suits filed under the Act and that it in no way lessened the right or duty of the holders of Texian bonds to bring suit within the time prescribed for the purpose of establishing the amount of principal and interest due on the bonds held by the owner.

The only cause of action which the holders of these bonds had was a suit to establish ownership of bonds and the amount due thereon. Money judgments against the State are not enforced by ordinary judicial process. Their payment is left up to legislative discretion and when made is customarily by an appropriation of money for that purpose.

In view of this it is my opinion that the right to sue provisions of Art. 842g are separate, distinct and severable from its proration or payment restrictions. See National Biscuit Company v. State, 134 Tex. 293, 135

1. Appellants' suit was filed July 31, 1957.

S.W.2d 687, where an invalid appropriation to pay judgments obtained contained in a right to sue resolution was held severable.

■ Appellant's cause of action accrued when consent to be sued was authorized by the State. State v. Elliott, Tex.Civ. App., 212 S.W. 695, writ refused. This is true, in my opinion, regardless of the attitude of the State towards payment of any judgment which might be obtained. The usual case is where the State has not indicated its policy towards payment. Litigants proceed on faith believing that the State will pay its just debts. Here the most that appears is that the State was mistaken in stating that it had received partial reimbursement from the United States Government for these bonds and restricting payment accordingly. The attitude of the State on becoming aware of this mistake is clearly shown by the subsequent legislative history of this matter, referred to in the Court's opinion herein. H.C.R. 118, p. 1155, Acts 53rd Leg., Reg.Sess.1953; H.C. R. 44, p. 1585, Acts 55th Leg., Reg.Sess. 1957. These resolutions, in my opinion, indicate that the Legislature would have authorized payment of judgments obtained under Art. 842g and would have withdrawn the restrictions which that Act imposed on payment. However this may be it is my opinion that appellants should have timely proceeded under Art. 842g, obtained judgment and thereafter sought its payment through legislative processes.

I realize that this construction of the statute is somewhat strained but it is supported upon the following general principles:

"A statute will not be construed so as to ascribe to the Legislature an intention of doing any unjust thing by its enactment, or of causing confusion thereby, if the statute is reasonably

susceptible of a construction showing the Legislature's intention to have been otherwise." State Highway Department v. Gorham, 139 Tex. 361, 162 S.W.2d 934, 936.

"* * * in case of conflict between two sections of an act, one section will not be held to repeal another unless such is the only construction that is permitted." Vol. 39 Tex.Jur. p. 142.

"* * * in construing a statute it frequently happens that a word or phrase must be added to, or eliminated from, a particular part or section in order to carry out the manifest intent, as disclosed by the entire enactment. In such circumstances, a word or phrase may be supplied or one term may be substituted for another, and repugnant superfluous or useless words and expressions may be disregarded." Vol. 39 Tex.Jur. p. 185.

My construction of the statute would be manifest if the words "payment to be" are inserted immediately before the word "prorated." This insertion is plainly justified under the above authorities.

Furthermore the ineffectiveness of this statute, if so it be, does not appear upon its face and is made to appear only upon the production of evidence.

When appellants' say that, as a matter of law, they could not have recovered anything in a suit brought under Art. 842g I presume they mean that the court trying such suit would have found from his own judicial knowledge that no Act of Congress authorized reimbursement of these bonds.[2]

Judicial notice merely supplants the necessity of producing evidence of the fact to be established. In Ohio Bell Tel. Co. v. Public Utilities Commission, 301 U.S.

---

2. Courts take judicial notice of the non-existence of a public Act of Congress.

Ofield v. National Ben. Life Ins. Co., Tex. Civ.App.Texarkana, 293 S.W. 271.

292, 57 S.Ct. 724, 729, 81 L.Ed. 1093 [3] the Court said:

"Moreover, notice [judicial] even when taken, has no other effect than to relieve one of the parties to a controversy of the burden of resorting to the usual forms of evidence." Citing Wigmore, Evidence, par. 2567, 1 Greenleaf, Evidence, 16th ed. p. 18. See also 31 C.J.S. Evidence § 13, p. 519.

Since appellants did not try out the issues of law and fact which they now raise, in a timely suit brought under Art. 842g, supra, where such issues [4] could have been adjudicated it is my opinion that the cause of action asserted here is barred by the terms of such statute unless validly waived by the State.

The fact that the period of limitation has run against assertion of a claim against the State would not prevent the State from waiving the bar of the statute. I quote from Caldwell County v. Harbert, 68 Tex. 321, loc. cit. 328, 4 S.W. 607, 612:

"As before said, there can be no constitutional objection to the power of the legislature to require a municipal subdivision of the state, such as a county, to provide for and pay any just claim against it after the lapse of such time as would ordinarily bar the claim. That in favor of and against counties, limitation will run in the absence of some statute to the contrary, does not affect the question. The power of the state to recognize and pay a claim against itself after the lapse of any period of time can not be questioned on any constitutional ground; and the power of the legislature over counties in reference to such matters as only affect them as

municipal subdivisions of the state through which local affairs are conducted, is just as broad."

See also Limestone County v. Robbins, 120 Tex. 341, 38 S.W.2d 580; 53 C.J.S. Limitations of Actions § 24, p. 959.

■ If Art. 842g and the two concurrent legislative resolutions were of the same dignity it could be plausibly and convincingly argued, to me, that appellants' suit was not barred by limitations. Art. 842g however is a general law which cannot be amended or repealed by a concurrent legislative resolution. Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 104 S.W.2d 3; Humble Oil & Refining Company v. State, Tex. Civ.App.Austin, 104 S.W.2d 174, writ ref.

Since Art. 842g was invoked by the State as a defense in this suit it is my opinion that the Trial Court was bound to enforce this general law and to disregard the resolutions of the Legislature which were in conflict with it.

I express no opinion on any other question presented.

GRAY, Justice (concurring).

■■ It is with some difficulty that I agree with the conclusion reached by the majority that Art. 842g bars a recovery by appellants. I do not agree with Chief Justice ARCHER that the defenses of laches and stale demand are available to the State here. I do agree that the issue of whether the cause of action is barred must be decided by the application of Art. 842g, and the Concurrent Resolution wherein the Legislature expressed its intent to relieve appellants of burdens imposed by Art. 842g. It cannot be questioned that the Legislature had the authority to suspend this.

---

3. This case also states that such evidence may be disputed. The validity of this statement is questioned by eminent authority. See Vol. 1, Sec. 154, McCormick and Ray, Texas Law of Evidence, 2nd ed.

4. Other possible issues which could have been there litigated are (1) The validity of the proration provision if its effect was to nullify the consent to sue (2) the effect to be given the failure to mention the proration provision in the Caption of the Act.

law. Art. 1, Sec. 28, Texas Constitution. However Justice Hughes has held, correctly I think, that the concurrent resolution was not effective to suspend Art. 842g, a general law.

The Legislature had the right to prescribe the terms and conditions of the right to sue the State. 38 Tex.Jur. p. 660, Sec. 59. It also had authority to, but did not, prescribe the period of limitation applicable to the cause of action by allowing a reasonable time in which to bring the suit. 28 Tex.Jur. pp. 80 and 81, Secs. 6 and 7. Art. 842g meets these requirements by giving parties two years within which to bring their suit. Thus a period within which the remedy must be pursued was fixed and that period was complete before this suit was filed. Art. 842g and the joint resolution deal with the same general subject [that is the bonds in question] and it is our duty to harmonize them if possible. 39 Tex.Jur. pp. 252 and 253, Secs. 134 and 135. The joint resolution merely gave appellants a right to sue but it did not provide a remedy.

Unquestionably the joint resolution gave appellants the right to sue and thus the meaning and application of the general rule that their cause of action then accrued is presented. To me it appears that the only answer to such inquiry is that appellants' right to sue the State accrued with the right of all holders of Texian bonds under Art. 842g. However that right expired after two years and appellants were then without the right to sue the State and test the validity of their claim under any law as well as to have determined the question whether Art. 842g was a valid enactment and whether its provisions were applicable to their cause of action. We all agree that it was a valid statute and that its provisions are applicable to appellants' alleged cause of action. This being true and the time provided in the statute for bringing suit having expired the jurisdiction of the court to hear the cause had ceased. Texas Mexican Ry. Co. v. Jarvis, 80 Tex. 456, 15 S.W. 1089, 1091. Appel-

lants then could not sue the State and test the statute, Art. 842g, except by consent as given by the joint resolution. However since their cause of action accrued under the general law (Art. 842g) a recovery is barred by the State's plea of four years limitation.

My stated conclusions make it unnecessary to express my opinion on matters not specifically mentioned herein.