THE ATTORNEY GENERAL
OF TEXAS
Gerald C. Mann
ATTORNEY GENERAL


Honorable W. D. Bradfield
Chairman
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. O-1708
Re: Is the definition of the words
"open saloon", as contained in
Article 666-3 of the Penal Code
void because unreasonable?

We have your letter of November 16, 1939, in which you request the opinion of the Attorney General as to the validity of the above captioned statute on account of the definition which is therein given by the Legislature to the words "open saloon".

On account of the importance of this subject, we quote your letter in full, which reads as follows:

"As Chairman of the Texas Liquor Control Board, I am writing to request your opinion, as Attorney General of Texas, on the validity of that part of the Texas Liquor Control Act which defines the term 'open saloon', as used in the Act, as meaning: 'any place where any intoxicants whatever, manufactured in whole or in part by means of the process of distillation, or any liquor composed or compounded in part of distilled spirits, is sold or offered for sale for beverage purposes by the drink or in broken or unsealed containers, or any place where any such liquors are sold or offered for sale for human consumption on the premises where sold'.

"It will be noted that the necessarily implied effect of this definition of the open saloon is to provide that only saloons licensed to sell whiskey shall be included in the definition, and that saloons not licensed to sell whiskey but only licensed to sell intoxicating liquors other than whiskey shall not be regarded as open saloons and, therefore, shall not be subject to the regulations and

inhibitions applicable by law to open saloons. As, of course, you are aware, Section 20 of Article 16 of the Constitution of Texas, adopted by the people at a special election on August 24, 1935, provides in its first sentence that: 'The open saloon shall be and is hereby prohibited. The Legislature shall have the power and it shall be its duty to define the term ''open saloon'' and enact laws against such.' Then, the next paragraph of the constitutional amendment, adopted at this same election, provides that only subject to this limitation shall the Legislature of Texas 'have the power to regulate the manufacture, sale, possession, and transportation of intoxicating liquors.' In view of the fact that for many years prior to the adoption of statewide prohibition by constitutional amendment in 1919, large numbers of the licensed saloons operating in Texas were wine and beer saloons not licensed to sell distilled liquors, it has been suggested, with what I regard as unanswerable force, that the definition of the open saloon, which effectually declares that wine and beer saloons are not open saloons is unreasonable upon its face; and is, therefore, void.

"Believing that it is highly important that the Texas Liquor Control Board and the people of Texas should be authoritatively advised as to the validity of this statute, I am writing to request of you, as the constitutional legal adviser of the State and of the Texas Liquor Control Board and of its Chairman and officers, your opinion, first, as to the validity of this statute; and, second, in case you find the present statutory definition of the open saloon invalid under the Constitution, your legal opinion is invited as to the effect of such unconstitutionality and invalidity of the statute referred to upon the remainder of the Texas Liquor Control Act."

It is believed that the Attorney General should never advise the law enforcement officers of the State that a criminal statute, or any section of a criminal statute, is void merely on the ground that it is deemed to be unreasonable in its terms, or in its definition of terms.

In a case where a statute is ambiguous, and is subject to two constructions, one of which would give to the statute a reasonable result and effectuate the purpose of the law, and another construction, though it should be based upon the more literal terms of the statute would lead to an absurd result and defeat the purpose of the law, the courts will unhesitatingly reject the latter and adopt

the former construction. But where a statute is plain and unambiguous in its terms and, therefore, construes tiself, the courts will not strike it down merely because it appears to be unreasonable in its provisions, or that it was conceived in unwisdom; for, if the courts were actuated merely by considerations of expediency in such cases, and should assume to annul on that ground, alone, it would be a substitution of the judicial for the legislative mind. Moreover, in passing upon the Acts of the Legislature, the courts as well as the executive departments of the State must yield willing allegiance to and be bound by the Constitution in all of its parts, and especially, in this connection, to that declaration in the Bill of Rights wherein it is provided that, "The faith of the people of Texas stands pledged to the preservation of a Republican form of government"; and Article II of the Constitution, which provides:

"Section 1. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

The Supreme Court of this State, throughout a judicial history of one hundred years, has steadfastly adhered to those constitutional barriers in passing upon and construing the Acts of the Legislature. While the Court has, at times, struck down a legislative Act because it was unintelligible in its terms, and, therefore, unenforceable at law and, in many instances, has declared void legislative enactments because they were passed in violation of constitutional provisions, we know of no case where that Court has annulled a statute on the single ground that it may have been considered to be an unreasonable or unwise enactment.

What has been said is well illustrated in the following text from 39 Tex. Jur., Sec. 89, at page 162, wherein it is stated:

"When statutes are up for construction, as often remarked, it is not within the judicial province to indulge in acts of legislation. It is for the Legislature, not the courts, to remedy defects or supply deficiencies in laws, and to give relief from unjust and unwise legislation,

although a court may, of course, direct the attention of the law-makers to a defect or omission in a statute.

"The proper function of a court in this connection is to declare and enforce the law as made by the Legislature, - to determine with as much definiteness and certainty as may be what the law is as it stands, rather than to announce what the law should be or to speculate as to why it is as it is. Accordingly, a court is not authorized, under any pretext, to modify, repeal, or re-write a statute, nor (as seen above, Sec. 88) even to 'construe' an unambiguous act to conform to its own notions of justice, policy, propriety, or wisdom. So, however desirable it might seem in certain cases, a court is not privileged to interpolate words, to add or eliminate provisions, or to enlarge, extend or restrict the scope of a law, except as this may be necessary to effectuate the legislative intent." (Italics ours.)

The statute to which you direct the attention of the Attorney General is Subdivision (a) of Article 666-3 of the Texas Liquor Control Act, which reads as follows:

"(a) The term 'open saloon', as used in this Act, means any place where any alcoholic beverage whatever, manufactured in whole or in part by means of the process of distillation, or any liquor composed or compounded in part of distilled spirits, is sold or offered for sale for beverage purposes by the drink or in broken or unsealed containers, or any place where any such liquors are sold or offered for sale for human consumption on the premises where sold."

It is believed that this statute is plain and unambiguous, and is not susceptibe to judicial construction; and, therefore, unless its enactment was forbidden by some constitutional provision, it cannot be held to be void because it may be thought to be unreasonable in its definition of the term "open saloon".

So far as our investigation has gone, that term has never been otherwise defined in any of the Legislative Acts dealing with the subject of intoxicating liquors. Webster's New International Dictionary gives as one, and the commonly accepted, meaning of the word "saloon" as being "a shop where intoxicating liquors are sold and drunk, commonly without meals". But that word has a wider signification, as is illustrated by the various definitions given to it in Bouvier's Law Dictionary, which reads:

"Saloon. A place of refreshment. An apartment for a specified public use. In common parlance, the word is used to designate a place where intoxicating liquors are sold, and this restricted meaning may be given to saloons, where the context or other circumstances require it; but it does not necessarily import a place where liquors are sold. The word has a much broader meaning than dram shop. To constitute a saloon it is not necessary that ardent spirits should be offered for sale and that it should be a business requiring a license under the revenue laws of the State."

Various authorities are cited in the text which are omitted in the quotation.

One of the cases cited by Mr. Bouvier is the Texas case of Early vs. State, 23 Tex. App. 364, 5 S.W. 122, from which we quote:

"Now, does the word 'saloon' necessarily imply that it is, or is the word convertible with the expression, 'a house for retailing spirituous liquors?' We think not, and the authorities in effect have declared otherwise in this state."

In the case of Springfield vs. State, 13 S. W. 752, the court said:

"It is charged in the indictment that defendant 'did unlawfully play at a game with cards in a house for retailing spirituous liquors'. This charge is not supported by the evidence before us. It was not proved that the house in which defendant played cards was a house for retailing spirituous liquors. The proof was that he played in a 'saloon'. A 'saloon' does not necessarily mean 'a house for retailing spirituous liquors'. Early's case, 23 Tex. App. 364, 5 S.W. Rep. 122. . . Because a conviction is unwarranted by the evidence the judgment is reversed, and the cause remanded."

And in the case of McMurtry vs. State, 38 Cr. App. 521, 43 S.W. 1010, 1012, the court said:

"There is no allegation in terms charging that the room where the game of cards was played was at a place for retailing spiritous liquors, unless it be conceded that the use of the language 'Bud Benson's Saloon' is tantamount to an allegation that it was a place for retailing spirituous liquors. The word 'saloon' has a varied meaning. It may be applied to a place for retailing spiritu-

ous liquors, or to many other kinds of places.
We do not believe that the allegation in this
respect is sufficient."

The decisions from which the above quotations
are taken are early cases, but, while we have investi-
gated, we do not find that these cases have been modified
or over-ruled by any subsequent decisions by our Court
of Criminal Appeals.

Hence, it appears that the word 'saloon' is a
proper one for a legislative definition. Especially do
we think this is true in a statute which creates a penal
offense. It would create an uncertainty in the law, in a
case of this kind, to leave it to a judge to define the
meaning of a term which has more than one meaning, and which
must be defined to make the law certain, for one judge
might construe the word one way and another judge in a
different way, and it is to avoid such uncertainties in the
enforcement of the law, and especially the criminal laws of
the State, that it is required that a statute which creates
a criminal offense must define the offense in plain and
intelligible terms.

At an election held on the fourth Saturday in
August, 1933, the qualified voters of the State adopted an
amendment to Section 20 of Article XVI of the Constitution
which had the effect to authorize in certain localities
of the State the manufacture and sale of malt and vinous
liquors not to exceed a definite alcoholic content, and
also to authorize in other localities only upon a local
option vote of the people in the manufacture and sale of
such liquors. That amendment and the legislative Acts pass-
ed in pursuance thereto were in effect August 24, 1935, when
another amendment to Section 20 of Article XVI of the Consti-
tution was adopted, which is generally referred to as the
amendment to the Constitution repealing statewide prohibition.

In consideration of the status then existing in
the State respecting the manufacture and sale of beer and
wine, the Attorney General would hesitate to hold, if he
had the authority so to do, that the definition which the
Legislature has given to the words "open saloon" in the
Act creating the Texas Liquor Control Board, and which was
passed pursuant to said amendment, is so unreasonable as to
render the statute void.

However, there is a more demanding reason why the
Attorney General should not so hold. All the words and pro-
visions of the said amendment to the Constitution have been
carefully considered in the study of the questions which
you have propounded, but assuming that they are equally well
known to you, and generally understood, we have given

special attention to those provisions of the amendment which are especially applicable to this discussion, and which we quote:

"Section 1. That Article XVI of the Constitution of Texas be amended by striking out Section 20a to Section 20e, both inclusive, and substituting in lieu thereof the following:

"Article XVI, Section 20 (a). The open saloon shall be and is hereby prohibited. The Legislature shall have power, and it shall be its duty to define the term 'open saloon' and enact laws against such.

"Subject to the foregoing, the Legislature shall have the power to regulate the manufacture, sale, possession and transportation of intoxicating liquors, including the power to establish a State monopoly on the sale of distilled liquors . . "

While the Constitution, like any other written document, is subject to judicial construction, when such construction is called for, yet in passing upon a constitutional provision the courts are not warranted in excluding from their consideration one section of the Constitution in order to emphasize another section, unless there is such uncertainty in the words of a given section of the Constitution as to require the courts to hold that such a provision is unintelligible, and, therefore, void.

The language of Subsection (a) of Section 20 of Article XVI of this Amendment to the Constitution is plain and not subject to judicial construction. The command there given to the Legislature to define the term "open saloon" is as much a part of the Constitution as the other provisions of that amendment. Therefore, it is not the function of the courts or of the Attorney General to speculate upon the reasons or motive which may have actuated the Legislature in submitting this amendment to the vote of the people in the language contained in the quoted Section. The Legislature could have defined the term "open saloon" in the joint resolution which submitted this Amendment to the people. They did not do so, and it was the province of the voters of the State, if they saw fit so to do, to reject the amendment on that or any other ground that may have actuated them in casting their votes. The people, alone, have power in such cases, and their act in adopting the Constitution or an amendment to the Constitution is the supreme law of the land, save only where it may conflict with the Constitution of the United States, and is binding alike on all departments of the State.

In 9 Tex. Jur., at page 421, it is said:

"The pronouncements of the Constitution
are imperious, supreme and paramount; and
statutory provisions which have been enacted
in pursuance of constitutional authority and
direction are said to assume the sanctity of
constitutional mandate. A common-law princi-
ple which is in conflict with the Constitution
is void." (Italics ours.)

The above quotation from Texas Jurisprudence
is but an epitome of the decisions of our appellate
courts, both civil and criminal, on this subject.

An enlightened understanding of, and implicit
obedience to the plain mandates of the Constitution, in-
cluding all amendments thereto, are essential to the
preservation of the American form of government. Hence,
it must, until changed in the constitutional way, over-
ride varying popular opinions and contrary individual
desires.

In the rather recent case of Travelers Insurance
Company vs. Marshall, 124 Tex. 445, 76 S.W. (2d) 1007,
Cureton, C.J., speaking for the Supreme Court, gave judi-
cial utterance to most of what has here been said. And
first among the many authorities cited by Judge Cureton
in one part of the opinion in that case is that of Stock-
ton vs. Montgomery, Dallam's Decisions, p. 473, which was
rendered in the early days of the Republic, and from
which we briefly quote:

"What is the consistution? It is the
basis on which the government rests, the author-
ity for all law; and is the commission under
which the legislature, the executive and judiciary
act. It is permanent and not influenced by the
tempor of the times. Whatever the collisions of
opposite interests, the virulence of parties and
the conspiracies of corruption, public robbery
and treason, it continues like the Himmaleh or
the Andes, amidst and above the storm; the nation's
destiny dependent upon its subsistence. . ."

In the case of Caldwell vs. Crockett, 68 Tex. 321,
4 S.W. 607, Stayton, J., speaking for the Supreme Court said:

"It is urged that the acts of August 7,
1876, April 22, 1879, and April 2, 1883, are
unconstitutional, in that they are retroactive

in character, and create demands where none before existed. That the Constitution commanded the Legislature to pass these laws, is a sufficient answer to this claim. Const. art. 16, Sec. 26. What the Constitution commands, cannot be unconstitutional."

The Legislature, in defining the words "open saloon", acted in obedience to the command of the people as expressed by their vote in adopting the foregoing constitutional amendment, and the Attorney General has no authority to annul that Act.

It becomes unnecessary to answer the second question which you have propounded in your letter.

Yours very truly

/s/ Gerald C. Mann
Attorney General of Texas

/s/ W. F. Moore
First Assistant Attorney General

Dict. to
FG.

12-13-39

MW

This Opinion
Considered and
Approved in
Limited
Conference