## W. A. HUFFMAN v. GEORGE MULKEY ET AL.

### No. 3071.

1. **Vendor and Vendee — Executory Sale of Land—Rescission.**—The right of a vendor to rescind who has conveyed land through a deed on its face reserving the vendor's lien, does not exist until the vendee has failed to pay the purchase money in accordance with the contract. One to whom the vendee has conveyed is entitled to all the rights of his vendor. This right can not be affected by any transaction between the original vendor and his vendee after the latter has parted with his interest in the land.

2. **Vendor's Right to Rescind Sale of Land.**—Such right to rescind can not arise until the vendee is in default in the payment of the purchase money.

3. **Same—Conveyance by Vendee.**—A conveyance by the vendee before default in the purchase money conveys to the purchaser all rights of the original vendee. No subsequent transactions between the original vendee and his vendor could affect the rights of the last purchaser.

4. **Same—Charge.**—A charge that the vendor had the superior title until the payment of the purchase money, and that a surrender by the vendee would render the vendor's title good, *held* error, it not appearing when the purchase money was due, and it also appearing that the vendee had sold; it not appearing that such sale was subsequent to his surrender of the land.

5. **Cases Questioned.**—Thompson v. Wentworth, 56 Texas, 265, and Kennedy v. Embry, 72 Texas, 389, criticised and questioned.

6. **Ratification of Deed.**—Although a deed be made to a party without his knowledge and prior consent, yet if he recognized its validity he becomes a party to it and is bound thereby.

7. **Interest of Joint Owners in Land.**—Such interest, in absence of other intent, is determined by the proportion of purchase money paid by each party.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham. The opinion contains a statement.

*Templeton & Carter* and *Wallace Hendricks*, for appellant. — 1. The court erred in instructing the jury, in effect, that the fact that Evans sold the land in contest to G. F. Parman, and for the purchase money reserved a lien in his said deed to Parman, vested in Evans a superior legal title, and that the jury should find for the defendants unless they believed that the deed made by G. F. Parman to the plaintiff, W. A. Huffman, and defendant Sam Evans was made with the knowledge and consent of the said Evans.

(1) Because there was no evidence to show that Parman had made default in the payment of the said purchase money prior to the time he made conveyance of said land to the plaintiff, Huffman, and defendant Evans, to-wit, June 19, 1875.

(2) Because there was no evidence to show when said purchase money became due.

(3) Because the undisputed evidence of Evans was that G. F. Parman's purchase money notes had never been surrendered to him, nor was there any evidence of any agreement made by Evans with Parman to surrender them, or that he was in a condition to surrender them.

(4) Because there was no evidence sufficient to satisfy the statute of frauds showing that Parman and Evans had canceled said trade.

(5) Nor was there any evidence to show that when Parman delivered Evans the possession of said land Huffman did not then own one-half of Parman's interest by reason of Parman's conveyance to Evans and Huffman.

2. The court erred in its charge to the jury in telling them, in effect, to find for defendant unless they believed that the deed made by G. F.

Parman to plaintiff and Evans was made with the knowledge and consent of Evans.

(1)   Because, in addition to the reasons given under the preceding assignment, this charge withdrew from the minds of the jury all of the evidence offered tending to show that Evans knew Huffman was claiming the land, and such evidence tending to prove a ratification of Huffman's acts in getting Parman's deed in settlement of firm debt due Evans and Huffman.

(2)   Because such charge was a charge upon the weight of the evidence, and in effect directed the jury not to consider the evidence received tending to show that after the 19th of June, 1875, Evans and Huffman released a part of said land as the owners thereof to Jake Johnson, and that when defendant Mulkey was negotiating purchase thereof he and Evans then discussed Huffman's claim to the land, and that Evans then in effect ratified and acquiesced in Huffman's claim thereto and ratified Parman's act in getting Parman's said deed.   Sayles' Civ. Stats., art. 1317, note 7; Cobb v. Beall, 1 Texas, 345.

3.   The charge of the court that defendants Evans and Parman could rescind their said contract of sale, Evans having admitted in his testimony that Parman was in the possession of the land and improved it, was in contravention of the statute of frauds governing the sale of lands.   Rev. Stats., art. 2464; Dill v. Crain, 10 Texas, 453; Stitzle v. Evans, 74 Texas, 596.

4.   The charge of the court in submitting the question of rescission to the jury was erroneous, vague, and incomplete, and was calculated to mislead and confuse the jury in failing to tell them under what circumstances Evans might exercise the right of rescission and in assuming that this right was clearly established. Tom v. Wollhoeffer, 61 Texas, 277; Russell & Seisfield v. Kirkbride, 62 Texas, 455; Scarborough v. Arran, 25 Texas, 129; Coddington v. Wells, 59 Texas, 49.

*M. D. Priest,* for appellees.— 1.   Where land is sold on credit and the vendor's lien is retained to secure the purchase money, the superior title remains in the vendor until the purchase money is paid.   Stephens v. Mathews, 69 Texas, 341; Burson v. Blackley, 67 Texas, 5.

2.   Where land is sold on credit, the vendee or those claiming under him cannot resist a suit by the vendor for the land, the purchase money being unpaid, nor can they oust him from the possession.   Jackson v. Palmer, 52 Texas, 427; Ufford v. Wells, 52 Texas, 612; McBride v. Bangus, 65 Texas, 179.

3.   The title to the property being in Evans, he could not be deprived of it without his consent.  If there was any evidence showing that Evans ever ratified the act of Huffman in procuring the deed, the appellant could have asked a special charge submitting that issue to the jury.  It has been

repeatedly decided by this court that a judgment will not be reversed for the failure of the trial judge to charge the whole law if he is correct as far as he goes. Even though it does not present the whole case, it will not be reversible error. 20 Texas, 200; 21 Texas, 625; 28 Texas, 556; 18 Texas, 317; Johnson v. Granger, 51 Texas, 42; Ins. Co. v. Ende, 65 Texas, 118; Chamblee v. Tarbox, 27 Texas, 146; Berry v. Donley, 26 Texas, 748.

STAYTON, CHIEF JUSTICE.—This is an action of trespass to try title, brought by W. A. Huffman against Sam Evans and the other defendants, to recover an undivided half interest in block 29 in the city of Fort Worth. The other defendants claim through conveyances from Sam Evans.

About August 23, 1871, Evans conveyed the block to Giles F. Parman, reserving in the face of the deed a lien for the purchase money, which was wholly unpaid at the time deed was executed.

About June 19, 1875, Parman conveyed the block to Sam Evans and W. A. Huffman, who are parties plaintiff and defendant in this action, and this is the basis of Huffman's claim.

At the time conveyance last mentioned was made Evans and Huffman were partners in mercantile business, and the deeds made by Evans to the other defendants were all subsequent to the conveyance from Parman to Evans and Huffman as well as to a deed made as a substitute for that deed, which, with its record, seems to have been destroyed in the burning of the court house of Tarrant County. The substituted deed was recorded February 1, 1877, two days after its execution, which was before any of the conveyances were made by Evans to the other defendants.

The theory of the defense was that Parman and Evans by parol agreement canceled the trade between them, and in support of that counsel for appellant thus states the evidence of Evans:

"'The purchase money due me from Parman was never paid. I never had any settlement with him about it, except he went off and vacated the premises and turned them over to me for the purchase money, and moved out west. He first moved out to Tandy's place. I knew nothing about the conveyance to Sam Evans and W. A. Huffman dated June 19, 1875, nor did I know anything about the conveyance made by him January 29, 1877. I don't remember when Parman vacated the land. It was sometime between the years 1873 and 1877. Parman built on the land. I furnished the lumber. In regard to the vendor's lien notes on this land I don't know what became of them. I suppose they were burned up with the building and other books. Mr. Huffman had charge of all the books and business and was winding it up, paying off the debts of the business. By the papers of the house I mean the mercantile papers. I say I don't know where the notes were. I never delivered them up to Parman."

While this was not the exact language of the witness, it contains the substance of Evans's testimony so far as it goes, but he further stated that he never authorized any one to procure a deed from Parman to himself and Huffman.

Huffman contended that the block was bought for Parman by Evans and himself, or for the firm, and after stating that he knew all about the transaction and that he and Evans were partners, testified that "the consideration (for the conveyance) was in part a merchandise account and the remainder balance due by Parman as purchase money on said lot of ground."

"I had authority to settle all store accounts. Captain Evans and I talked the matter over and decided that it was best to take the property, as Mr. Parman had nothing else to pay with. I think the store account was about $700 and balance due on the purchase money about $800, but can't be positive as to amount.

"I was acting as partner and on account of the firm; Evans knew of the transaction; the firm name was Evans & Huffman. I did not put any money into the said purchase from Parman; it was paid for with partnership assets, as stated above."

The evidence of the witness was taken by deposition.

There was some other evidence tending to show that Evans recognized the fact that Huffman had some interest in the block.

On the question of title the court instructed the jury as follows:

"It is agreed in this case that the land in controversy was patented to M. T. Johnson, and by said Johnson's administrators conveyed to defendant Evans; that said Evans conveyed the same to G. F. Parman on credit, and that he reserved a lien for the payment of the purchase money; and and you are instructed that under the facts so agreed the superior title remained in said Evans until the payment of the purchase money; and unless you further believe from the evidence that the deed subsequently made by the said Parman to said Evans and plaintiff was made with the consent of said Evans, and if you believe from the evidence that upon failure to pay the same said Parman surrendered the possession of said land to the said Evans, you should find for the defendant.

"If, however, you believe from the evidence that said deed from Parman was made to said Evans and plaintiff Huffman with the knowledge and consent of said Evans, then the said deed would vest in the plaintiff title to one-half of said land, and in that event you should find for him, the plaintiff, as against all the defendants, except the defendant Swartz, one-half the land claimed by them respectively."

The right of a vendor who has conveyed land through a deed on its face reserving a lien for purchase money to rescind is not an absolute right, even in cases in which the purchase money has become due and remains

unpaid, as may be seen by an examination of the many cases decided by this court.

The right of the vendor to rescind in such cases does not exist at all until the vendee has failed to pay purchase money in accordance with the contract, and one to whom a vendee has conveyed is entitled to all the rights of his vendor, which cannot be affected by any transaction between the original vendor and his vendee after the latter has parted with his interest in the land.

The evidence does not show when the transaction between Evans and Parman occurred, which it is claimed operated a rescission of the contract between them, and is consistent with the fact that this may have occurred after Parman had conveyed to Evans and Huffman.

The evidence further fails to show when the notes executed by Parman matured, and under this state of facts in this action we think the charge was misleading, in that the jury must have understood from it that Huffman could not recover unless he showed that the purchase money had been paid or that the conveyance to Evans and himself was made with consent of the former.

If he bought without consent of Evans and before Evans had right to rescind or had in some lawful manner actually rescinded, no agreement subsequently made between Parman and Evans could defeat any right acquired by him through the deed from Parman to Evans and himself; and before Evans could hold the land by any superior right as a vendor it would be incumbent on him to show a right to rescind, which, in such a case, could not be proved unless it was shown that the purchase money was due and unpaid.

In Kennedy v. Embry, 72 Texas, 389, it was held that a vendor of land who had executed a deed to the purchaser and taken a mortgage to secure the purchase money might sell to another and pass title to the land after all the purchase money became due and remained unpaid. In that case no part of the contract had been performed by the purchaser; he had never been in possession, all the purchase money was past due and unpaid, and the purchaser had abandoned the State.

A similar ruling was made in Thompson v. Westbrook, 56 Texas, 265.

In these cases the facts existed which entitled the vendors to rescind, but the cases push the application of the rules growing out of the holding that such contracts are executory in character to the utmost verge of propriety or reason; and the writer doubts the correctness of the holding even in such cases that rescission can, in any case in which a deed has passed, be made otherwise than by a writing or some decree of proper tribunal, if for no other reason, because it makes title to land to rest largely in parol, when the purpose of the statutes of fraud was to require such right to be evidenced in a different manner.

In Dial v. Crain, 10 Texas, 453, a parol rescission of an executory con-
Vol. LXXVIII — 36

tract to convey land was set up, and in disposing of the case it was said: "This was a good and valid contract under the statute of frauds, and was proof that the land was sold by Vaughan to Crain. If so, then, Crain being the owner of the land, any contract for rescission would be as much obnoxious to the provisions of the statute of frauds, and would require the same evidence under the statute to set it up as was required for the sale between Vaughan and Crain. The charge asked treated the contract between Vaughan and Crain evidenced by the writing signed by Vaughan as a mere verbal contract, and such as could be rescinded verbally, without any reference to the provisions of the statute of frauds, and as if for that purpose inferior evidence could be received."

However this may be, all the cases deny to the vendor the right to rescind so long as the vendee is not in default.

In Burgess v. Millican, 50 Texas, 401, quoting from Dunlap v. Wright, 11 Texas, 597, it was said: "When a mortgage for the payment of the purchase money for land is executed simultaneously with the deed by which it is conveyed, the vendor has, until the purchase money is paid or the mortgage foreclosed, the superior right, and if the vendor go into possession *after the vendee has made default,* he can not be turned out by process of ejectment or trespass to try title, notwithstanding the claim for the purchase money may be barred by the general law of limitations. * * * The effect of the principles in these cases is that the vendor's deed may be absolute, yet if a mortgage for the purchase money be given back at the same time, the fee will absolutely remain in the vendor. The sale will be conditional, the ultimate right to the fee depending on the performance or nonperformance of the conditions. If the purchase money be paid, if the mortgage be satisfied, the seizure will be regarded as having been in the vendee *ab initio,* or from the date of purchase. If not paid the vendor will, in the language of Stow v. Tifft, 15 Johns., 458, be reseized free of the mortgage."

Under this the right to rescind does not exist until the vendee is in default, and to prove the fact giving this right rests on the vendor in a contest with a third person. If the notes executed by Parman were overdue, and he surrendered possession of the land to Evans before the conveyance from him to Evans and Huffman, then Huffman can not maintain this action unless on grounds hereafter to be stated, or unless facts are shown not suggested by the record before us. Burgess v. Millican, 50 Texas, 397.

The charge of the court was further calculated to mislead the jury, in that it made consent of Evans to the making of the deed to himself and Huffman essential to its validity or effect for the purpose of passing title.

If Evans did not know of or consent to the conveyance to himself and Huffman before the deed was made, but did subsequently have knowledge of it and of the transaction which brought it about, he would be bound by it as fully as would he by prior consent, if he recognized its validity

and thus induced Huffman to rely upon title under it while limitation would bar the claim due to the firm from Parman.

There was evidence tending to show that Evans knew of and recognized the validity of the deed to himself and Huffman.

If Evans knew of the facts stated by Huffman, and authorized the taking of the deed to himself and Huffman, then he can not resist the right of Huffman to recover any interest in the block which the facts may entitle him to, even though the notes of Parman were past due when that deed was made and Evans in possession of the land; but the interest of Huffman in the block, in the absence of some other controlling fact, ought to be measured by the proportion which his share of the purchase money bears to the entire sum which was the consideration for the deed.

For the matters noticed, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 20, 1890.

Motion for rehearing refused, Galveston Term, January 13, 1891.