ELIZABETH CULVER ET AL V. W. L. PICKENS ET AL.

No. 8110.  Decided December 8, 1943.
Rehearing overruled January 5, 1944.
(176 S. W., 2d Series, 167.)

*Cramer & Green* and *J. S. Grisham,* all of Dallas, *H. L. Anderson,* of Birmingham, Ala., and *Thomas Y. Banks,* of Tyler, for petitioners.

*Bromberg, Leftwich, Gowan & Schmucker* and *Prentice Wilson,* all of Dallas, and Dan Moody, of Austin, for respondents.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion for the Court.

Petitioners, heirs and claimants under heirs of George L. Culver, deceased, brought this action to establish a constructive trust based upon alleged fraud on the part of respondent, W. L. Pickens, who was formerly administrator of the estate of the deceased, and for an accounting; the property upon which it is sought to establish a trust consisting largely of oil and gas leases and oil bearing properties fully described in the petition. In a pretrial hearing special exceptions to their second amended original petition were sustained and, upon their declining further to amend, the case was dismissed. The Court of Civil Appeals held that the trial court erred in its ruling on each of the special exceptions sustained by it, but further held that the judgment of the trial court was nevertheless correct because the claim asserted by petitioners was barred by laches. The trial court overruled the exception presenting the question of laches, but the Court of Civil Appeals sustained that exception and, upon that ground alone, affirmed the trial court's judgment. 169 S. W. (2d) 523.

Were we of the opinion that the trial court erred in overruling that exception, we would reverse the judgment of the Court of Civil Appeals and remand the cause in order to afford the parties an opportunity to amend, if they so desired. Boren v. Billington, 82 Texas 137, 18 S. W. 101. But we are of opinion that it did not err in that ruling.

The petition alleged that George L. Culver died, intestate, in Dallas county on February 16, 1936, leaving as his sole heirs at law his father, G. C. Culver, and his mother, Elizabeth Culver; that shortly thereafter the father and mother conveyed

undivided portions of the estate to the other petitioners herein, all of whom were related to the deceased; that before George L. Culver was buried the respondent, W. L. Pickens, a business associate and joint owner of mineral interests with him, procured from the father and mother of deceased a waiver of their right to be appointed administrator, and on the same day was appointed and qualified as temporary administrator of said estate, and thereafter on the 11th day of March, 1936, qualified as permanent administrator. It was further alleged that by March 3, 1937, all property of the estate had been disposed of· by Pickens, as administrator, except 998 of the 1000 shares of the capital stock of Nathan Oil Company, Inc., of the reasonable market value of $650,000, three-fourths interest in approximately 350,000 barrels of crude oil, of the value of $100,000 and other assets of the value of $50,000. The liabilitiees of the estate and of Nathan Oil Company, Inc., together were alleged to be not more than $145,000, leaving a net valuation and reasonable market value of the estate at $665,000.

It was further alleged that some time prior to March 3, 1937, while serving as administrator of the estate, and as President of the Nathan Oil Company, Inc., Pickens conspired with respondent, E. L. Wilson, in a fraudulent and collusive scheme and plan to acquire the property and assets of said estate and of said oil company for an amount far less than their actual worth or reasonable market value; that in pursuance of that scheme Pickens made false representations to the petitioners, not necessary to be set out here; that petitioners, in reliance thereon and at the insistence of Pickens, did, on March 3, 1937, sign an instrument drawn by Pickens' attorney authorizing the directors of Nathan Oil Company, Inc., including the said Pickens, as its president, and also authorizing Pickens, as administrator, to make and consummate a sale of all of the prop-·erties owned and claimed by the oil company and of all the properties owned by the estate, with certain immaterial exceptions, to Wilson or Pickens, or to both of them, for a total sales price of $235,000. It was further alleged that after the execution of the purported agreement Pickens, as administrator and as president of said oil company, acting in conjunction with Wilson and in furtherance of their fraudulent and collusive scheme, proceeded to liquidate the affairs and assets of the estate and of the oil company, through simulated, collusive and fraudulent transfers of the estate and properties thereof; that by means of a series of assignments and deeds executed on or after March 3, 1937, Pickens, in the name and on behalf of Nathan Oil Com-

pany, Inc., purported to convey to Wilson certain described properties in various counties in Texas; that such assignments were fictitious, simulated, collusive and fraudulent; that Wilson was not the true and actual purchaser of the property, but was the stooge and alter ego of Pickens and was merely a conduit through which Pickens sought to gain and hold title for himself; and that after March 3rd, 1937, the remaining assets and properties were appropriated and converted by Pickens and Wilson to their own use and benefit. It was alleged that the consideration pretended to be paid by respondents, Pickens and Wilson, for the properties acquired by them was paid out of the funds belonging to the estate and the oil company.

It was further alleged that thereafter the respondents dissolved said oil company and surrendered its charter; that Pickens, as administrator, filed his report in writing in the county court reporting that through liquidation of the assets and affairs of the said oil company and through sale of said assets, made to W. L. Wilson, the net sum of $157,208.08 was realized. A further allegation was that the actual and real purchaser was Pickens himself who, in concealing from the court his own interest, practiced an imposition and fraud upon the court.

The prayer of the petition was that the purported agreement executed by petitioners on March 3, 1937, and all of the deeds and conveyances from Nathan Oil Company, Inc., to E. L. Wilson above mentioned be set aside and cancelled; that a trust be declared and established in favor of petitioners against certain described properties now held by Pickens and Wilson and allegedly acquired through fraud upon the petitioners; that a decree be entertained that respondents have held and operated said properties as trustees for plaintiffs' benefit. They also prayed for an accounting and for general relief. The pleadings are set out in greater detail in the opinion of the Court of Civil Appeals, but it is thought that the above statement will serve the purpose of reflecting the bases of the rulings made in this opinion.

The original petition was filed on February 28, 1941. As held by the Court of Civil Appeals, petitioners' cause of action, if any they have, came into existence on March 3, 1937, the date of the execution of the instrument sought to be cancelled for fraud, and since the suit was filed three days before the expiration of four years from that date, the cause is not barred by limitation.

■ It is the general rule that under our blended system, where both law and equity are administered by the same court, statutes of limitation apply to equitable actions the same as to legal actions. Turner v. Hunt, 131 Texas 492, 116 S. W. (2d) 688; 117 A. L. R. 1066; Hendricks v. Martin, 267 S. W. 1047; Huggins v. Johnston, 3 S. W. (2d) 937; 27 Tex. Jur. p. 24, Sec. 7. However, it is conceivable that the circumstances of a given case might be so extraordinary that to deny a defendant the defense of laches would work a grave injustice. In that situation it has been held that such defense may not be precluded even though the statutory period has not run. City of Corpus Christi v. Flato, 83 S. W. (2d) 433 (error dismissed), 27 Tex. Jur. p. 25, Sec. 7. Conceding that to be the correct rule, then the question before us is whether or not it affirmatively appears from the allegations of petitioners' second amended original petition that such extraordinary circumstances exist in this case, as a matter of law, as would bar the action notwithstanding the fact that the statutory period of limitation has not run.

■ Laches is a defense which must be pleaded and ordinarily must be determined on the trial on the merits. Turner v. Hunt, 131 Texas 492, 116 S. W. (2d) 688, 117 A. L. R. 1066; Collins v. Griffith, 105 S. W. (2d) 895; Patterson v. Shell Petroleum Corporation, 143 S. W. (2d) 208. If, however, it affirmatively appears by allegations of the petition that the defense is available, it may be urged by demurrer. But it is not incumbent upon a plaintiff to incorporate in his petition allegations which negative the defense. As stated in 19 Am. Jur., Equity, Sec. 510:

"The complainant need not incorporate in his bill an allegation concerning change or absence of change in the situation of the defendant. The facts in this respect constitute matter of defense and, hence, are not required to be negatived in the complainant's pleading."

In Ross' Estate v. Abrams, 239 S. W. 705, 709, Chief Justice Fly quoted with approval from Pomeroy on Equity, Vol. 5, Sec. 1442, as follows:

" 'Laches, in legal significance, is not mere delay but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law; but when knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right'."

■ The petition before us does not reveal any change of conditions or circumstances which would render it inequitable, as a matter of law, to permit petitioners to assert their cause of action. It is alleged that respondents paid for the properties upon which it is sought to establish a constructive trust, not with their own money, but with money belonging to the estate of the deceased, and there is no allegation that they have ever spent any of their own money in operating these properties other than that produced by the properties themselves. There is no allegation that rights of third parties have intervened. In short, we can perceive no equitable reason for denying petitioners the right to prosecute their suit. The elements of estoppel do not appear.

■ It is a matter of common knowledge that oil properties are subject to great fluctuation in value, and that the production of oil involves large expenditures of money. Those facts should properly be given weight in determining the question of whether a cause of action is barred by laches, but the mere fact that the properties involved are oil and gas properties does not, within itself, operate to bar a cause of action by laches when same would not otherwise be barred. It seems clear to us that the petition under review is not demurrable on the ground of laches. Accordingly we hold that the Court of Civil Appeals was in error in its ruling that the trial court erred in overruling the special exception presenting the question of laches.

■ Having determined that the judgment of the Court of Civil Appeals cannot be affirmed upon the ground which same was based, we look to the briefs filed in that court to determine whether same may be affirmed upon some other ground properly presented therein. Al Parker Securities Co. v. Owen (Com. App.) 1 S. W. (2d) 271; Whittenburg v. Miller, 139 Texas 586, 164 S. W. (2d) 497. After considering those briefs as well as those filed here, we are well convinced that the Court of Civil Appeals correctly decided all questions presented to it except the question of laches. It is particularly insisted here that that court erred in its holding that the matters under review had not been adjudicated in the probate court, and that this action did not constitute a collateral attack upon the orders of such court. As we view the record and the applicable law, the Court of Civil Appeals was more liberal to respondents in the consideration of that question than the law required. The petition under review did not set out the contents of any order of the probate court. It merely alleged that, as administrator, Pickens filed his report in writing to that court reporting that through

liquidation of the assets and affairs of the Nathan Oil Company, Inc., and through sale of such assets to E. L. Wilson, a stated sum of money was realized. It was held by the Court of Civil Appeals that, since petitioners' allegations referred to the administration, they brought under review the entire proceedings, in so far as pertinent, in this action, and that court in its opinion quoted what purported to be an order of the probate court not appearing in the petition at all. While it is true that the court will take judicial knowledge of its own records. we know of no rule which would authorize a district court or a court of civil appeals in passing upon a demurrer in a case like this to take judicial knowledge of the records of a probate court. Further, according to this petition, the sale of the properties of the Nathan Oil Company, Inc., to Wilson was made by Pickens in his capacity as president of the oil company and not as administrator of the estate. It is not apparent how the probate court would be called upon to exercise jurisdiction in approving or disapproving such a sale. Whatever authority Pickens had for conveying this property under the allegations of the petition came through the instrument signed by petitioners on March 3, 1937, and here under attack, and not through any probate order. The foregoing statement is made as an additional reason why the Court of Civil Appeals correctly ruled on this question.

The judgments of the trial court and the Court of Civil Appeals are both reversed and the cause is remanded.

Opinion adopted by the Supreme Court December 8, 1943.

Rehearing overruled January 5, 1944.