R. V. WHITESIDE V. A. L. BELL ET AL

No. A-8013. Decided May 31, 1961
Rehearing overruled July 12, 1961
(347 S. W. 2d Series 568)

*Abney, Abney & Baldwin,* of Marshall, *Kilgore & Kilgore,* of Dallas, for petitioner.

*Furrh & Peteet,* of Marshall, for respondents.

MR. JUSTICE CULVER delivered the opinion of the Court.

This case involves the title to an undivided one-half of the minerals under a certain tract of 103.7 acres of land in Harrison County. Petitioner, Whiteside, purchased this mineral interest while there was an outstanding purchase-money lien on the entire tract. Subsequently the land was reconveyed to the holder of the vendor's lien notes and in cancellation thereof.

In 1916 the land was conveyed to Howard Spann with

vendor's lien retained. In 1919 Spann conveyed the one-half mineral interest and the purchaser, a few months later, by quitclaim deed conveyed this property to Whiteside, a resident of Minnesota. The notes were extended from time to time and ultimately were transferred and assigned to A. L. Webster. In 1932 Spann and wife conveyed this tract to A. L. Webster reciting the consideration as follows:

"That we, Howard Spann and his wife, Irine Spann of the County of Harrison and State of Texas in consideration of the cancellation and surrender of four certain notes of a series of six vendor's lien notes said four notes being due one each on November 18th, 1919, November 18th 1920, November 18th 1921 and November 18th 1922 and having been given as part of the purchase price of the tract of land hereby conveyed and which notes were and have been kept in full force and effect as well as the lien securing the same by extension agreements shown of record in the records of Harrison County, Texas, said four notes together with the vendor's lien given to secure the same now being past due and constitute a valid indebtedness and lien against the land hereby conveyed which indebtedness we are not able to pay; and which indebtedness together with the lien securing same is now owned and held by A. L. Webster grantee herein;"

That conveyance was promptly placed of record.

It is shown that Whiteside, after placing his deed of record, paid all state and county taxes due and owing on the property and that his address was posted on the records of the tax collector. It also appears that he had no actual notice of the reconveyance of the tract to Webster until shortly before he filed an answer in this cause. Thus some 27 years had intervened.

This suit was filed by respondents, Bell and others, successors in title to A. L. Webster in the usual form of trespass to try title. Both parties moved for summary judgment. Bell's motion was granted by the trial court and judgment entered awarding title. The judgment has been affirmed by the Court of Civil Appeals. 336 S.W. 2d 930. We concur in that result.

Petitioner, Whiteside, contends (1) that the transaction between Webster and Spann did not in law constitute a rescission of the original sale to Spann; (2) there could be no rescission eliminating Whiteside's interest without notice to him of an

intention to rescind, and (3) that Whiteside was not required to assert his equities within a reasonable time after the recording of the deed from Spann to Webster.

We recognize the holding in Maupin v. Chaney, 139 Texas 426, 163 S.W. 2d 380, 384, as follows:

> "As the holder of the vendor's lien and superior title they had a right to rescind the conveyance upon default by the defendants. Whether or not they did rescind the contract of sale will depend on their intentions, as well as their acts and conduct in the premises. In order to constitute a rescission there must be an election on the part of the holder of the superior title to so rescind, and in order for there to be such an election there must be an intention to so elect. 29 Tex. Jur. 920."

■ Under the facts in this case, however, we believe the trial court was warranted in concluding that there was a rescission as a matter of law. Webster was dead at the time suit was filed. Spann executed an affidavit that sheds no light and adds nothing to the recital of facts in the deed of conveyance. Rescission is a unilateral right resting with the holder of the notes. Having the right to rescind and to recover all of the land to which his lien attached in the absence of anything to the contrary, we think it would naturally be presumed that he did intend to rescind and exercise all the rights to which he was entitled. The conveyance from Spann back to Webster purported to convey all of the 103.7 acre tract and in fact described it as "being the identical tract of land conveyed to Howard Spann by W. R. Sherrod et al by deed shown of record." Of course the lien held by Webster was valid and subsisting as to the entire tract including the mineral interest.

While we have found no authority squarely passing on the question here involved we think a brief reference to some well-established principles will be helpful.

■ The courts of our state have long been committed to the proposition that a deed conveying land and reserving a lien for the unpaid purchase money is treated as an executory contract that will ripen into a title in the purchaser when he has performed his obligation to pay the purchase money. It is accordingly held that when the vendee refuses to pay the vendor may claim an immediate rescission and recover the land. That right

is not waived by an agreement for the extension of the time of payment except during the period of extension. Lanier v. Faust, 81 Tex. 186, 16 S.W. 994.

██ Where the vendee defaults in the payment of the purchase price there are several remedies available to the vendor. He may file a suit for debt and foreclosure. He may file a suit in trespass to try title to recover the land thereby effecting a rescission. Rescission may be accomplished by agreement between the parties. Vendor may also rescind by reentering upon the land and taking possession thereof, or by executing a deed to some third party which may amount to a repudiation of the sale to the original vendee. Admittedly in a situation of this kind where the rights of the subvendee are involved, those rights may not be prejudiced either by foreclosure or rescission. The subvendee would have the right in equity to pay off the indebtedness or have a marshalling of the assets, namely, as in this case, that the surface and one-half of the minerals be devoted to the extinguishment of the debt before application of the lien to his 50-acre mineral interest. R. B. Spencer & Co. v. May, 78 S.W. 2d 665, wr. ref.

Although a subsequent vendee is not a necessary party to the lien foreclosure his right to become the owner of the legal title by paying the purchase price is not cut off by the suit. He could intervene and tender the amount of the indebtedness and even after judgment in the foreclosure suit he could accomplish the same result by tendering the proper amount provided he acts within a reasonable length of time. State v. Forest Lawn Lot Owners Ass'n., 152 Tex. 41, 254 S.W. 2d 87; Howell v. Townsend, Tex. Civ. App., 217 S.W. 975, wr. ref.; Wier v. Yates, Tex. Civ. App., 237 S.W. 623, wr. ref.

So the problem here really comes down to the question of whether or not the burden is upon the lienholder to give notice to the subvendee of his intention to rescind or whether it is the subvendee's obligation to make the necessary inquiry himself. The decision necessarily works some hardship on one or the other of the adverse parties.

The theory of Whiteside is that the vendor must bring home notice to the subvendee of his intention to rescind and that there is no obligation on the subvendee to make inquiry as to whether or not the original vendee has paid the purchase price and acquired title, thus in turn making the title of the subvendee secure.

Petitioner takes the position that the subvendee must have adequate notice of the vendor's rescission of the original contract for the sale of the land where the vendor does not resort to judicial action. In support of that contention he cites several decisions by this court which we shall discuss briefly.

In Phillips v. Herndon, 78 Tex. 378, 14 S.W. 857, the court held that the vendor was not entitled to rescind the sale to his vendee without giving notice of his intention so to do. The same situation obtained in Heirs of Reddin v. Smith, 65 Tex. 26. Neither of the above decisions concern the rights of a subvendee.

In Huffman v. Mulkey, 78 Tex. 556, 14 S.W. 1029, Evans conveyed to Parman reserving vendor's lien; Parman conveyed to Evans and Huffman who were partners in a mercantile business. The court held that if Evans knew of and recognized the validity of the deed to himself and Huffman and authorized the same he could not resist the right of Huffman to recover any interest in the land which the facts may entitle him to, even though the notes of Parman were past due when the deed was made to Evans and Huffman and although Evans was in possession of the land.

In Tom v. Wollhoefer, 61 Tex. 277, the court observed that "Parties dealing with the vendee before his part of the contract has been complied with, do so with full knowledge of the vendor's rights, and cannot ordinarily be heard to complain, if, by reason of default on the part of the purchaser, their contracts with him are rendered of no avail." The court held, however, that there were such equities in favor of a mortgagee of the purchaser as to prevent a rescission without a recognition of the mortgagee's rights against the property.

None of these cases, we think, bear out petitioner's contention that a subvendee must have notice of the vendor's intention to rescind.

In the principal case relied upon by the Court of Civil Appeals, Revard et al. v. Wood et al., Tex. Civ. App., 156 S.W. 2d 561, wr. ref. w.o.m., the subvendee was not made a party to the foreclosure suit and the court held that it was not necessary that she be made a party. She merely contended that since the notes that she had executed to the original vendee were barred at the time of her suit by the 4-year statute of limitation and since she was not made a party to the foreclosure suit she was vested with

the superior title to the portion of the land that she had bought. The court points out that had she used due diligence in setting up her equity and tendering the amount due on the original vendor's lien notes that she might have obtained relief but not so after waiting 15 years, long after the notes are barred and without tendering the amount due.

In Williams v. Coleman-Fulton Pasture Co. et al., Tex. Civ. App., 157 S.W. 2d 995, wr. ref. w.o.m., a subvendee was held not to be a necessary party to proceedings to foreclose a vendor's lien and his equitable right to complete payment of the purchase price and acquire title was barred by laches after 18 years had elapsed from the time of entry of the foreclosure judgment during which time oil was discovered and being produced therefrom.

Howell v. Townsend, Tex. Civ. App., 217 S.W. 975, wr. ref., holds that the original vendor is not required to make subvendees parties to a suit for foreclosure of the vendor's lien but that the subvendee must protect his own equities in the land and this is true for the reason that the original vendee has no right to force any third person into the contract with his vendor.

■ In summary we say that the authorities hold in this state that in a foreclosure a subvendee is not a necessary party, but that he may step into the shoes of his defaulting vendee, tender the amount due and recover the title provided he acts within a reasonable length of time.

We see no reason for not applying the same rule to this case where there has been a rescission instead of a foreclosure. The result has been the same. The notice given constructively by a judgment in foreclosure is no more effective than the recording of the deed of reconveyance. We think 27 years is more than a reasonable time for Whiteside to have acted. While the record does not show the discovery or production of oil on the premises yet it does show a lease was executed by Bell and others to the Atlantic Refining Company in 1951. At any rate, aside from the discovery of oil we know as a matter of common knowledge that in such period of time land values have increased greatly in all sections of the state.

The consideration recited in the mineral deed from Spann to Whiteside's vendor was $50.00. While the price paid by Whiteside is not shown there is no reason to believe that this property had

increased substantially in value in the few months between these two conveyances in 1919. Whiteside knew at the time of his purchase that the entire tract was burdened with the outstanding purchase money lien and subject to foreclosure or the rescission of any other rights legally vested in the holder of the notes and lien. Twenty-seven years have elapsed since the deed from Spann to Webster was placed of record. In the meantime A. L. Webster in 1945 conveyed the land to Bell reserving an undivided one-half interest in the minerals for a term of 20 years. Webster died in 1946. The rights of third parties have intervened. The facts that Whiteside had paid the state and county taxes for all of these years and that his name was to be found in the tax collector's records do not constitute notice, actual or constructive, and will not serve to bolster his claim.

Laches is defined as "an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay;" 30 C.J.S., Equity, § 112.

We are of the opinion that under the facts before us it would be inequitable to recognize the validity of Whiteside's claim. He is barred by the operation of laches and we so hold.

The judgments of the trial court and the Court of Civil Appeals are affirmed.

MR. JUSTICE NORVELL, joined by JUSTICES SMITH and HAMILTON, dissenting.

The holding of the Court which likens a private "rescission" of a vendor's lien agreement to a court foreclosure represents an extension of the doctrine of extra-judicial vendor's lien "rescissions" or foreclosures. I would not extend the rule of Revard v. Wood, Tex. Civ. App., 156 S.W. 2d 561 so as to cover cases such as the present one. We should, insofar as compatible with precedent, insist that titles to real property be evidenced by written instruments or legal proceedings which are definite and certain. The rule, applicable to judicial foreclosures, that a subvendee is not a necessary party to a suit, but his rights are not extinguished if he is not made a party thereto generally presents the further question of when and under what conditions are the rights of the subvendee finally terminated. This often calls for another suit and generally as a practical matter it would

have been more expeditious to have made the subvendee a party to the original suit. Why then import this rather uncertain and archaic way of doing things into the field of private "rescissions"?

I agree with the petitioner who asserts that for one of these private "rescissions", such as we have in this case, to be effective as to a subvendee, it is essential that such subvendee have notice thereof. Our recording acts do not purport to charge one with notice of instruments filed subsequent to the time his deed is placed of record. Article 6631, Vernon's Ann. Tex. Stats., White v. McGregor, 92 Tex. 556, 50 S.W. 564; Wests' Heirs v. Vick, Tex. Civ. App., 203 S.W. 63, wr. dism. The only constructive notice chargeable to Whiteside here is the existence of the lien against the property when he acquired his mineral interest therein. He is not charged with notice that his grantor had failed to pay the debt secured by the lien and entered into an agreement with the holder thereof whereby he conveyed the property, including an undivided one half mineral interest which he did not then own, to the lien holder in settlement of the debt and lien. It is conceded that Whiteside had no actual notice of the private "rescission" between Webster and Spann. Whiteside's interest being a mineral interest, he had no right to the surface (other than the part thereof that might be necessary to the development of such mineral estate) ; consequently from his standpoint a change in surface possession in itself could not be notice to him of the assertion of the paramount legal title.

This presents the question of whether or not any notice was necessary to lend efficacy to the Webster-Spann transaction insofar as terminating Whiteside's mineral interest was concerned.

In Phillips v. Herndon, 78 Tex. 378, 14 S.W. 857 it was said that:

"Herndon (the vendor) having received from Moseley at least a part of the purchase money for the lands, and Moseley having taken possession under his contracts of purchase, Herndon could not rescind the sales to him without notice of his intention to do so; * * *. At the time Herndon attempted to rescind the sales to Moseley, after the death of both Moseley and his wife, there was no one to whom notice of his intention to rescind could be given, and there was therefore no rescission effected."

In Huffman v. Mulkey, 78 Tex. 556, 14 S.W. 1029, it was said:

"The right of a vendor, who has conveyed land through a deed on its face reserving a lien for purchase money, to rescind, is not an absolute right, even in cases in which the purchase money has become due and remained unpaid, as may be seen by an examination of the many cases decided by this court. The right of the vendor to rescind, in such cases, does not exist at all until the vendee has failed to pay purchase money in accordance with the contract, and one to whom a vendee has conveyed is *entitled to all the rights of his vendor*, which cannot be affected by any transaction between the original vendor and his vendee after the latter has parted with his interest in the land."

To my mind, these authorities support the proposition that notice to the subvendee is necessary. While agreements whereby a vendee reconveys lands to a vendor in settlement of an indebtedness are commonly spoken of as "rescissions," this term may be somewhat misleading when the rights of a subvendee are involved. The transaction certainly is not a bilateral rescission. Spann's action could in no way divest Whiteside of the mineral interest which he, Spann, had conveyed away. The Webster-Spann transaction insofar as Whiteside is concerned must be viewed as a unilateral one because Webster was the only one who possessed the title and right to terminate Whiteside's interest in the property. If we consider Webster's acceptance of the deed from Spann as a species of foreclosure or the assertion of a paramount title by Webster, the fact remains that at that time Whiteside had equities in the property and was entitled to notice of Webster's action. Whiteside had the right to pay the purchase money debt secured by the lien and thus protect his mineral interest. He also had the right to demand that that portion of the property retained by Spann, after his conveyance to Whiteside's predecessor in title, be first applied to the discharge of the Webster indebtedness before his mineral interest be taken. Application of portions of land originally sold as a unit to the discharge of an indebtedness in the inverse order of alienation is a familiar example of resort to the doctrine of the marshalling of assets. If notice to the original vendee is essential to the exercise of one of these unilateral rescissions, then why should not notice to a subvendee having substantial interests in the property be also required? If it should be suggested that this rule would severely burden a

vendor by requiring him to notify subvendees of his intention to assert his paramount title, I would point out that after all the years of Texas experience with vendor's liens, this is seemingly the first case wherein in the absence of notice, the rights of a subvendee have been effectively cut off by a private "rescission" between the vendor and the original vendee. The opinion of the Court does not rest upon any decided case so holding but rather upon an analogy between the type of transaction we have here and the judicial foreclosure considered in Revard v. Wood, Tex. Civ. App., 156 S.W. 2d 561.

Neither the rule of stare decisis nor the rule of precedent requires the acceptance of arguments based upon analogies which would extend a rule or doctrine of law to new factual situations when unfavorable or injust results may be foreseen as resulting from such extension. McMahon v. Christmann, 157 Tex. 403, 303 S.W. 2d 341.

The question of laches actually raises the question of notice in another form. If the vendor is under no duty to notify the subvendee of the assertion of his paramount title, then I would readily concede that Whiteside, in order to protect his equity, would have to act with reasonable promptness. But if the law requires notice to a subvendee (as I believe it does) before his rights may be terminated by a private agreement between the vendor and the original vendee, then a different situation is presented. Lands, and particularly mineral estates therein, are often held for long periods of time for investment and speculative purposes and I would be most hesitant to rely upon the uncertain and often complicated doctrine of laches to effect the evaporation of a land title or interest in land which had vested in accordance with a duly recorded written instrument. I would not apply it in this case because there is no element of estoppel present which would or should bar Whiteside's request for relief under the doctrine of marshalling of assets.

Upon authority of Culver v. Pickens, 142 Tex. 87, 176 S.W. 2d 167, it was said in Pearson v. American Fidelity & Casualty Co., Tex. Civ. App., 321 S.W. 2d 620, 622, ref. n.r.e., that:

"In considering the question of laches and/or stale demand, the facts of each case must be considered. A stale demand or claim is one that has for a long time remained unasserted, one that is first asserted after unexplained delay of such great length as to render it difficult or impossible for the court to ascertain truth of matters in controversy and

do justice between the parties, or as to create presumption against existence or validity of claim, or presumption that it has been abandoned or satisfied. Laches is not merely delay in bringing an action, but each (sic) delay working disadvantage to another, and operates as estoppel against assertion of a right only when a party, knowing his rights, takes no steps to enforce them until condition of other party has, in good faith, become so changed that he cannot be restored to former state."

To my mind, if it be conceded that notice to subvendee should have been given, petitioner's argument on the laches question is not answered by saying that the land has increased in value since the private rescission between Webster and Spann. At that time, all Webster was entitled to was the payment of the remainder of the purchase price agreed upon; a substantial portion thereof having already been paid. If he wanted to acquire the subvendee's interest, he should have given such vendee an opportunity to protect himself by demanding a marshalling of assets. The rule adopted by the Court allows a vendor to effect a private rescission with the original vendee without the knowledge of the subvendee in the hope that the subvendee will not learn of the transaction until too late to protect himself. A device is approved whereby parties are allowed to legally act in a fashion so as to bring about results which may not meet the accepted standards of fairness and equity. Whether such is the result in this case is rather beside the point insofar as the effect of the Court's decision as a precedent is concerned. The way is left open if not pointed out.

To sum up, I simply would not recognize the private "rescission" of the vendor and the original vendee without notice to the subvendee as being effective as to the subvendee's rights. The private rescission is a device which has seldom been employed heretofore if the decided appellate cases constitute any indication. Its recognition as valid by this Court could cause some mischief and create uncertainty in land titles. The far better rule would be one requiring the vendor to give notice to the subvendee before his unilateral rescission can be effective as to the subvendee. Less hardship and firmer land titles will be engendered by this course, which in my opinion is clearly indicated by Phillips v. Herndon, 78 Tex. 378, 14 S.W. 857 and Huffman v. Mulkey, 78 Tex. 556, 14 S.W. 102.

Being unable to concur in the Court's order of affirmance, I respectfully dissent.