Wolf FURMAN, Appellant,

v.

Robert O. SANCHEZ, Administrator of the Estate of Juanita Sanchez, Deceased, Appellee.

No. 15391.

Court of Civil Appeals of Texas, San Antonio.

April 30, 1975.

254

Doyle L. Coatney, San Antonio, for appellant.

Allan A. Black, Guy Bonham, San Antonio, for appellee.

KLINGEMAN, Justice.

This suit was filed by appellee, Robert O. Sanchez, as administrator of the Estate of Juanita Sanchez, Deceased, against Wolf Furman and Alberto Martinez and wife, Gregoria Martinez, to have a sale by Furman of certain property in Bexar County, Texas, set aside and for specific performance of an executory contract of sale; or in the alternative for damages as a result of such sale. The property was the subject of an executory contract of sale between Furman and Mrs. Sanchez, dated June 2, 1964, under which Mrs. Sanchez was to make certain stipulated monthly payments. Mrs. Sanchez died intestate on the 26th day of August, 1970; and, at such time, some monthly payments under such contract were delinquent. After the death of Mrs. Sanchez, such contract was formerly cancelled and terminated by Furman on or about April 7, 1971. Furman took possession of such property and entered into another executory contract of sale covering such property with the Martinezes on April 15, 1971. Robert O. Sanchez was appointed administrator of the estate of Mrs. Sanchez on March 19, 1973, and shortly thereafter such administrator filed the present suit in the District Court of Bexar County, Texas. The trial court, without a jury, granted judgment for appellee against Furman in the amount of $5,143.08 [1] and denied any and all other relief prayed for by any of the parties. The Martinezes did not perfect an appeal and are not involved in this appeal. Extensive findings of fact and conclusions of law were made by the trial court.[2]

1. Such amount is based on a market valuation of $6,000.00 for the property, and rents in the amount of $2,035.00, aggregating $8,035.00; less an offset in favor of Furman in the sum of $2,891.92.

2. Such findings of fact and conclusions of law are summarized as follows:
Findings of fact:

(1) On June 2, 1964, Furman and Mrs. Sanchez entered into a contract of sale on the subject property, under which Mrs. Sanchez was to pay a total sum of $4,490.00 in stipulated monthly installments.

(2) On August 26, 1970, Mrs. Sanchez died intestate.

(3) On April 7, 1971, Furman formally cancelled the contract.

The findings of fact, which are set forth in the footnote in some detail, set forth generally the material factual background. Other revelant facts are:

(a) the contract between Mrs. Sanchez and Furman provided for monthly payments in the amount of $45.00 commencing on June 8, 1964, with a total consideration of $4,490.00 to be paid by the buyer.

(b) Mrs. Sanchez made payment from June 8, 1964, to May 8, 1970.

(c) No further payments were made after May 8, 1970, and at the time of her death, several monthly payments had not been made.

(d) No attempt to cancel said contract was made prior to Mrs. Sanchez's death.

(e) The property was not used by Mrs. Sanchez as her homestead, and she rented such premises to third parties.

(f) The contract provided that in the event of a default by the buyer, the seller could declare the contract null and void, consider all prior payments as rent, retain possession of the premises and give notice to the buyer by means of a letter addressed

(4) Furman thereafter took possession of the property and on April 15, 1971, entered into another executory contract of sale on such property to Alberto R. Martinez and wife Gregoria Martinez.

(5) Furman had knowledge of Mrs. Sanchez's death prior to his cancellation of the contract.

(6) The reasonable market value of the property on the date of sale to the Martinezes was $6,000.00.

(7) At such time, there was a balance of $2,891.92 owing by Mrs. Sanchez to Furman.

(8) The reasonable rental value of the property is $55.00 a month which, calculated from the date of the execution of the Martinez contract to the date of the judgment, aggregates $2,035.00.

(9) On March 19, 1973, Letters of Administration on the estate of Mrs. Sanchez were granted to Robert O. Sanchez, and on May 22, 1973, the administrator filed suit against Furman and the Martinezes to have the Furman-Martinez contract of sale set aside and, in the alternative, for damages.

(10) The Martinezes have had possession of said property since April 15, 1971.

(11) Administration on the estate of Mrs. Sanchez is still pending, and there are claims outstanding.

(12) Furman did not attempt to terminate the Furman-Sanchez contract prior to her death.

(13) Robert O. Sanchez individually had knowledge prior to April 7, 1971, that the contract between Mrs. Sanchez and Furman was in default, and Furman had contacted Mr. Sanchez's attorney on several occasions attempting to secure payment under his contract.

(14) The property was unoccupied on April 15, 1971.
Conclusions of law:

(1) The contract between Mrs. Sanchez and Furman was an executory agreement to convey the property involved upon completion of all payments and obligations by Mrs. Sanchez.

(2) No legal or equitable title to the property passed to Mrs. Sanchez, her administrator, or her heirs, but only the equitable right to enforce the contract to convey the legal title upon the compliance of the terms of said contract and the payment of the consideration of the purchase.

(3) The administrator of the estate of Mrs. Sanchez was entitled to have the cancellation of the contract of sale with Furman, and the forfeiture of Mrs. Sanchez's rights thereunder, set aside.

(4) The cancellation by Furman of such contract with Mrs. Sanchez and the forfeiture of her rights in the property, on April 15, 1971, was wrongful and illegal.

(5) Upon the death of Mrs. Sanchez, Furman was relegated to the method required by law in cases of administration to terminate the rights of the deceased, Mrs. Sanchez, in the contract of sale.

(6) Appellee is entitled to recover damages based on the fair market value of the subject property on the 15th day of April, 1971.

(7) Appellee is also entitled to recover damages based on the rental value of the property from April 15, 1971, for a period of 37 months at $55.00 per month, for a total of $2,035.00.

(8) Furman is entitled to an offset credit on said amount of damages in the sum of $2,891.92.

(9) The cancellation of such contract of sale terminating an equitable right which Mrs. Sanchez had in the property could not be had without administration on the estate of the deceased, and if such contract was cancelled within four years after her death without administration proceedings, such cancellation was subject to be voided and set aside upon the application of the administrator of her estate.

to 206 S. San Manuel, the location of the property.

(g) The seller, at his option, could declare the whole amount of indebtedness then owing due, and could enforce specific performance of such contract.

(h) After the death of Mrs. Sanchez, Furman contacted the plaintiff herein through his attorney on several occasions in an attempt to obtain payment on the contract.

(i) Mr. Robert O. Sanchez testified that he was aware that payments on the property were in default, and that neither he or the other heirs made any payments on the contract.

(j) Furman testified that he told Sanchez that the city was going to tear the house down, and that Sanchez told him that he could do whatever he wanted to do with the property.

(k) The contract between Mrs. Sanchez and Furman was never recorded.

(l) Alberto Martinez, the subsequent purchaser of the property, testified that at the time he entered into the contract of purchase with Furman, he had no knowledge of any contract of sale with anyone else on the property or that anyone was making any claim to such property.

(m) The property was unoccupied at the time the Martinez contract was entered into.

(n) The contract of sale with Martinez, which was dated April 15, 1971, provided for the total consideration of $4,990.00 payable in monthly installments of $55.00 per month.

(o) Martinez testified that he paid $100.00 down and had regularly made the monthly payments. He further testified that he had made improvements to the property, and there was introduced into evidence an exhibit listing improvements in the amount of $457.44. Martinez testified that, in addition to these improvements, he also installed a water heater at a cost of $110.00 to him.

By his first three points of error, appellant complains that the trial court erred in concluding that a cancellation of the contract of sale between Furman and Mrs. Sanchez could not be had without an administration on the estate of the deceased, and if such a cancellation was attempted within four years after the death of Mrs. Sanchez, it was subject to be voided and set aside upon the application of the administrator. By his last two points of error, appellant complains of error in the amount of damages awarded.

The central issue to be decided in this case is whether or not the seller of real property under an executory contract of sale in default must, in order to terminate the contract of a deceased buyer, proceed through an administration of the estate of the deceased buyer.

Under the generally accepted rule in the United States, a purchaser, under an executory contract to purchase land acquires equitable title to the land at the time of the execution of the contract. Early Texas cases made a distinction between equitable rights and equitable title with regard to such contracts. It was held that a purchaser under such contract had only an equitable right so long as the purchase price remained unpaid, and he could not resist his seller's action for possession. On the other hand, when the purchaser had fully complied, he obtained equitable title and could demand a conveyance from a vendor. Hemming v. Zimmerschitte, 4 Tex. 159 (1849). Subsequent cases have not always followed this early distinction. The Commission of Appeals held in 1922 that the vendee of a contract of purchase, especially where he goes into possession of the property, is vested with the equitable title from the date of the contract, or in any event from the date he takes possession. Leeson v. City of Houston, 243 S.W. 485 (Tex. Comm'n App. 1922, judgment adopted). See also Alworth v. Ellison, 27 S.W.

2d 639 (Tex.Civ.App.—Eastland 1930, writ ref'd); but cf. Johnson v. Wood, 138 Tex. 106, 157 S.W.2d 146 (1941). Whether speaking in terms of equitable right or equitable title, the Texas cases have generally given to the purchaser all the rights and incidents of title usually accorded to the holder of full equitable title in other states. Dean, Real Property–Executory Land Contracts–Passage of Equitable Title, 11 Sw.L.J. 384 (1957); City of Garland v. Wentzel, 294 S.W.2d 145 (Tex.Civ.App.—Dallas 1956, writ ref'd n. r. e.); Hughes v. Groshart, 150 S.W.2d 827 (Tex.Civ.App.—Amarillo 1941, no writ); Taylor v. Herrin, 127 S.W.2d 945 (Tex.Civ.App.—Galveston 1939, no writ); Dimmitt Elevator Company v. Carter, 70 S.W.2d 615 (Tex.Civ.App.—Amarillo 1934, no writ); Ingram v. Central Bitulithic Company, 51 S.W.2d 1067 (Tex.Civ.App.—Waco 1932, writ ref'd); Leonard v. Kendall, 5 S.W.2d 197 (Tex. Civ.App.—Beaumont 1928, writ dism'd); Rives v. James, 3 S.W.2d 932 (Tex.Civ. App.—San Antonio 1928, writ dism'd); Leeson v. City of Houston, *supra*; Armstrong v. Gifford, 196 S.W. 723 (Tex.Civ. App.—San Antonio 1917, no writ); Texas & P. Ry. Co. v. ̣ ̣ lard, 127 S.W. 1152 (Tex.Civ.App.—1 ) ; Matula v. Lane, 56 S.W. 112 (Tex.Civ.App.—1900).

Appellee contends that irrespective of whether you regard the purchaser's interest as an equitable title or an equitable right, the trial court reached the correct conclusion in the case and that it is controlled by the decision of the Supreme Court in Pearce v. Stokes, 155 Tex. 564, 291 S.W.2d 309 (1956). In such case, the Supreme Court held that a sale, made under a deed of trust after the death of a grantor and before administration had been sued out, or before the time in which an administration could be sued out had elapsed, is suspended and held in abeyance until an administration is had, when it becomes ineffectual to convey the title, or until the passing of the period when the administration could be had, at which time it becomes effectual to pass title.[3] Appellant urges that the *Stokes* case involved a foreclosure under a mortgage and not a cancellation under an executory contract of sale and that the same rule is not applicable.

The crucial question to be answered by us is whether or not the deceased vendee under an executory contract of sale of land has the same protection and is entitled to the same legal and equitable relief as a vendee under a sale where a vendor's lien and deed of trust are obtained by the vendor. We think the same rule should be applied to both.

Rule 37, Tex.Prob.Code Ann. (1956), reads in part as follows:

" . . . whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exception aforesaid[4] shall still be liable and subject in their hands to the payment of the debts of the intestate; but upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and he shall recover possession of and hold such estate in trust to be disposed of in accordance with law."

Appellant urges that in the situation where a vendor conveys land and retains a mortgage in the form of a vendor's lien and deed of trust, he is the holder of a promissory note with the mortgage on the real property given to secure the payment of the underlying debt and that an admin-

---

3. Later cases applying the same rule are American Savings and Loan Association of Houston v. Jones, 482 S.W.2d 62 (Tex.Civ. App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.); Cole v. Franklin Life Ins. Co., 93 F.2d 620 (5th Cir. 1937).

4. The exception aforesaid reads: " . . . . except such as is exempted by law . . . ."

istration is the proper way to collect such debt; but that we do not have such a debt situation here. Examination of the executory contract of sale here involved reveals that the purchase price for the property is the sum of $4,490.00, and that the deferred consideration bears interest at the rate of 8% per annum. In the event of default, the vendor has these options: (1) he can declare the contract cancelled and terminated; (2) he may declare the whole amount of the indebtedness due at once; (3) he can enforce specific performance of the contract. These are virtually the same rights and remedies that a vendor-lienor has. In Whiteside v. Bell, 162 Tex. 411, 347 S.W.2d 568 (1961), the Court held that a deed conveying land and reserving a lien for unpaid purchase money is an executory contract which ripens into title when the purchaser has performed his obligation; that upon a purchaser's default, the vendor-lienor may sue for debt and foreclosure, or may rescind by agreement with the purchaser, by re-entering land, or by repudiating original sale by selling to a third party. In the case before us, the vendor gave notice of cancellation, entered into possession of the property, and made a sale to a third party.

Whether the interest of the purchaser under an executory contract of sale be regarded as an equitable title or an equitable right, in cases involving a termination of a deceased purchaser's right of title in the property, we see no compelling reason for making any distinction between a termination of such rights or title by foreclosure under a mortgage, or a termination of such rights or title by cancellation under a contract of purchase, and that in the interest of uniformity of holding the rule applied in the *Stokes* case should be applicable to both situations.

█ We have concluded as a matter of policy and in the interests of justice that the rule adopted by the Supreme Court in Pearce v. Stokes, *supra,* should also apply in the instant case and that the trial court

properly held that after the death of Mrs. Sanchez the cancellation of the contract of sale between Furman and Mrs. Sanchez cancelling all of her equitable rights, title and interests in the property could not be had without an administration upon the estate of deceased and that the attempted cancellation within four years after her death was subject to be voided and set aside upon application of the administrator of her estate.

█ The trial court found that the cancellation by Furman of such contract of sale with Mrs. Sanchez, and forfeiture of her rights in the property on April 15, 1971, was wrongful and illegal, predicated upon its holding that Furman, after the death of Mrs. Sanchez, in order to terminate the contract had to proceed through an administration on the estate of such purchaser. Based upon such wrongful cancellation, taking and sale of the property, the trial court correctly found appellant to be entitled to damages in the amount of $6,000.00, the market value of the property on April 15, 1971. However, we find no justification for the additional award to appellant of rents in the sum of $2,035.00, the rental value of the property from April 15, 1971, to the date of the judgment. The trial court denied any recovery against the Martinezes, and in no way cancelled the Martinez-Furman contract of April 15, 1971. Appellant had no title, legal or equitable, to the property after April 15, 1971. Appellant was awarded the market value of the property on April 15, 1971. Under the record, we do not see how appellant was entitled to any rents on the property.

It is clear from the record that Robert O. Sanchez, the administrator who brought this suit, and an heir of Mrs. Sanchez, was aware prior to April 15, 1971, that there were a number of delinquent monthly payments under the contract. It further appears from the record that during the period of time prior to April 15, 1971, Furman was attempting to obtain payment under the contract, but no payments were made

either by Robert O. Sanchez or any of the other heirs. Furman testified that when the city was about to condemn the property and tear it down that Robert O. Sanchez was notified and that he told Furman to do what he wanted to about the property. Moreover, although the present adminstrator, Robert O. Sanchez, knew prior to April 15, 1971, of delinquencies under the contract, no administration was taken out until May 19, 1973, a period of almost two years. It is clear that during this period of time no attempt was made by appellants to pay up said contract in whole or in part, and that no payments were made and no taxes were paid. Under the record, we find no justification for the award of rents to appellant.

The judgment is reformed so as to delete therefrom the award to appellants of rents in the sum of $2,035.00 which will reduce the judgment to the sum of $3,108.08. In all other respects, the judgment is affirmed. Costs are awarded ⅔ against appellant and ⅓ against appellee.